174   246
177   ²628
177   ²637,

BECKER, Appellant, v. LINCOLN REAL ESTATE AND BUILDING COMPANY.

Division One, April 1, 1903.

1. **Elevator Passenger:** CARE AND LIABILITY OF COMPANY. There is no distinction in law between the duties and liabilities of a carrier by elevator and one by railroad. Neither is an insurer of the safety of its passengers, but each is bound to use the utmost care and skill in the choice and maintenance of machinery, and in the selection of its operators.

2. ———: ———: STARTING ELEVATOR. The operator in charge of an elevator is bound to know that persons may wish to leave it and until he knows they do not he has no right to start the elevator until he has waited long enough to allow such persons, by the exercise of ordinary care, to leave the elevator in safety.·

3. ———: ———: ———: TIME TO ALIGHT. The owner of the· building is not excused if the operator, after he has been notified by one passenger to stop at a designated floor, stops there long enough to allow that passenger to alight and then pauses only long enough· "to enable the other passengers to indicate their desire to alight at that floor." He must, without any further directions, remain long· enough to enable them, by the exercise of ordinary care, to alight in. safety.

4. ———: ———: ———: DIRECTIONS TO OPERATOR. When any one· passenger on an elevator directs the operator to stop at a certain. floor, it is not necessary for every other passenger who wishes to get off at that floor to repeat the direction, but it is the duty of the operator, when so directed by any passenger, to stop at such floor for a length of time sufficient for that passenger and any other passengers. who desire to alight at that floor to reasonably do so, and before starting the elevator again it is his duty to use reasonable care to ascertain if there are other persons in the act of getting off.

5. ———: ———: ———: ———: CASE STATED. The plaintiff, escorted by a gentleman who had an office on the fourth floor of defendant's building, entered the elevator at the ground floor, the gentleman, as they got in the elevator, standing aside and "waved" or showed her in, in full view of the operator, and gave him notice to stop at the fourth floor, there being only two other persons in the,. elevator, The gentleman stepped off, but she was not allowed a reasonable time in which to alight, but a reasonable time in which to·

indicate a desire to alight. *Held*, that it was not necessary for plaintiff to indicate a desire to leave in any other manner than to act with reasonable diligence, but it was the duty of the operator to ascertain before again starting whether she was in the act of leaving.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz*, Judge.

REVERSED AND REMANDED.

*A. R. Taylor* for appellant.

Respondent was a carrier of passengers and as such was held to the same high degree of care as a common carrier of passengers for hire—that is, to the highest degree of care of practical and skillful carriers by passenger elevators. Lee v. Knapp & Co., 155 Mo. 641.

*Robert A. Holland, Jr.,* for respondent; *Seddon & Blair* of counsel.

The judgment rendered in this cause for defendant was for the right party, and should be allowed to stand.    Under the pleadings and evidence the case should not have been submitted to the jury: (a)  Because the evidence shows that the accident was due to no negligence on the part of defendant. (b)  Because the accident did not happen in the manner alleged in the petition.    State v. Brooks, 99 Mo. 137; Geary v. Railroad, 162 Mo. 75; Chitty v. Railroad, 148 Mo. 64.

MARSHALL, J.—This is an action for fifteen thousand dollars damages for personal injuries received by the plaintiff on April 10, 1900, while a passenger in one of defendant's elevators, in its building on the corner of Seventh and Chestnut streets in St. Louis.    The petition alleges that she entered the elevator "to be carried as such passenger to the fourth floor of said building, and to be there allowed an opportunity to alight

from said elevator. Yet the plaintiff avers that whilst said elevator was stopped at said fourth floor of said building to enable passengers to alight from said elevator, and whilst the plaintiff was proceeding to alight from said elevator whilst so stopped, and before she had time or opportunity to so alight from said elevator, defendant's servant, in charge of said elevator, negligently caused and suffered said elevator to be started upward, whereby the plaintiff was caused to be jerked, and fell, so that,'' she was seriously injured.

The answer is a general denial and a plea of contributory negligence. There was a verdict and judgment for the defendant, and plaintiff appealed.

The following statement of the case by appellant's attorney is a fair summary of what was shown on the trial by the testimony, and is therefore adopted:

''The action is grounded upon the theory that the respondent was on April 10, 1900, the proprietor of an office building at the southwest corner of Seventh and Chestnut streets in the city of St. Louis. The respondent rented out the various offices in the building which were occupied by professional and other business occupants, wherein persons were invited to transact business. The respondent operated a number of elevators in the building to carry passengers from the ground to the various floors above. The elevator in question was one of the elevators so operated by the respondent. On the fourth floor of appellant's said building H. R. Hall, an attorney, occupied an office as a tenant of the respondent. The appellant, on April 10, 1900, entered said building in company with Mr. Hall on her way to his office for the transaction of business with him. They entered from Chestnut street, which was the main entrance to the building. They entered the second elevator counting from the east, appellant being waved into the elevator by Mr. Hall, the escort, and entering the elevator ahead of Mr. Hall. As the elevator approached the fourth floor, Mr. Hall called for the elevator to stop

at the fourth floor, and the elevator did stop properly at the fourth floor to discharge passengers. Mr. Hall, who stood nearer the door than appellant, stepped out first, and appellant was following immediately behind, close enough to touch him with her hand. When appellant was in the door of the elevator, and as she thinks with one foot extending from the elevator floor to the floor of the corridor, the elevator started up with full speed, the appellant was caused to fall back into the elevator, probably by the jerk given by the elevator's rapid movement, and by being pulled back by the elevator operator in her fall, one of her feet was caught and crushed between the elevator floor and the grating of the doors of the elevator and the bone of her ankle was broken. The ligaments, arteries and tendons of her foot were ruptured and crushed. After she sank to the floor of the elevator, a passenger, Mr. Mason, clerk for the Wabash railroad, sustained her head upon his knee. The elevator stopped between the fifth and sixth floors. Appellant was carried down in the elevator to the basement, placed in a chair in the engine room, and thence removed to her home. Her injuries are serious and permanent, as shown by the record, but for the purpose of this hearing need not be further detailed. She is crippled and disabled. Suffered great pain, and incurred and will incur large expenses in seeking relief.

"The above is the substantial version of the case as told by the plaintiff and her witnesses, Dr. Crosswhite, Dr. Hart, H. R. Hall, and Charles P. Mason.

"The evidence for the respondent tended to contradict that for the appellant in that the witness, Hiram Ogden, testified for respondent that he was the conductor of the elevator. That he got the signal to stop at the fourth floor to let off passengers. That he did stop the elevator at that floor and that Mr. Hall got off. That after Mr. Hall got off he looked around to see if other passengers wanted to get off, and seeing no movement by any other passenger, he closed the doors of the ele-

vator and then started the elevator up, and that after the doors of the elevator were closed and after the elevator had started up, and had gotten three or four feet above the floor of the corridor the appellant rushed at the door and that he threw his arm out and threw her back, and that in falling, 'somehow' she caught her foot between the floor of the elevator and the grating of the doors, and was injured. The doors opened and closed automatically; frequently used the hand in closing.

"The statement of the other witness contained in the application for continuance tended to corroborate the evidence of the conductor, and the conductor and elevator starter testified that after the injury, whilst the appellant was in the engine room, she said it was not the conductor's fault. This statement was contradicted by Mr. Hall and the plaintiff."

The plaintiff concedes that the evidence is conflicting upon the essential issues of negligence and contributory negligence, and therefore the finding of the jury will not be reviewed in this court, and limits her contention to the questions of law in the case.

## I.

The plaintiff was a passenger in the defendant's elevator. It was her duty to use ordinary care to keep from being hurt. The duty of the defendant, as a carrier of passengers, as stated in 10 Am. and Eng. Ency. of Law (2 Ed.), p. 946, and quoted and approved by this court, in Lee v. Knapp & Co., 155 Mo. l. c. 641, is as follows: ":A carrier by elevator is not an insurer, but is required to exercise the highest degree of care in everything calculated to insure the safety of his passengers. There is no distinction in law between the duties and liabilities of a carrier by elevator and one by railroad. Each is bound to the use of the utmost care and skill in the choice and maintenance of machinery and appliances, and the selection of operatives, and the liability

of both for the slightest negligence of an operative, irrespective of the care with which he may have been selected, resulting in damages to a passenger, is, in its last analysis, identical.''

The gravamen of the plaintiff's claim and proof is that she exercised ordinary care to leave the elevator promptly when it stopped at the fourth floor, but while she was in the act of so doing and before she had reasonable time in which to do so, the operator of the elevator started it upward very rapidly, whereby she was wrenched and hurled back and slipped or fell and was injured. The defendant's claim and proof is that after the elevator had started upward from the fourth floor, after the doors had been closed, after the elevator had gotten three or four feet above the fourth floor, the plaintiff, without any previous notice, request or motion indicating a desire to leave the elevator at the fourth floor, ''rushed quickly forward, as she rushed forward he threw up his arm to force her back; keep her from danger; her foot slipped and slid down between the floor of the car and the iron work which forms the front of the cage, the front of the shaft,'' or as one of the defendant's witnesses expressed it: ''When she got to the door (which was closed) the operator quickly extended his arm, so as to check her motion. Somehow the woman's foot at that time got caught between the floor of the elevator and the grating.''

The plaintiff's further contention is that her escort, Mr. Hall, called for the fourth floor, the elevator stopped there, he got out, she followed him as closely and quickly as she could, and the elevator started with a jerk before she could get out, whereby she was thrown down and hurt, and that it was not incumbent upon her to call for the fourth floor after her escort had done so, nor to do anything more than she did do.

In Keller v. Railroad, 27 Minn. 178, l. c. 182, the rule is there stated: ''Those in charge of trains are bound to presume that there may be such persons in

the cars" [persons desiring to leave the train are spoken of] "and, unless they know there are not, they have no right to start the trains until they have waited long enough to allow such passengers to alight; nor, even after waiting a reasonable time for such persons to get off, have they a right to start the trains without using reasonable care to ascertain if there are such persons in the act of getting off. It certainly would not be permissible for them to be so reckless of the lives and limbs of passengers as to start the trains when they know, or with reasonable care might know, that passengers are in the act of alighting."

This rule is quoted and made a part of the text in Hutchinson on Carriers, sec. 612, the author in the same section saying: "The exact length of time to be given" [for passengers to alight] "it is said in a recent case, must depend very largely upon circumstances. For instance, a longer time would be required where there are many passengers to alight than where there are but few; on a dark night, with the landing place badly lighted, than where it is in full light; at a difficult place to alight, than where it is easy. And as railroad companies usually carry not merely the vigorous and active, but also those who, from age or extreme youth, are slower in their movements than vigorous and active persons, the time of stopping is not to be measured by the time in which the latter make their exit from the cars, but by the time in which the other class may, using diligence, but without hurry and confusion, alight."

Dougherty v. Railroad, 81 Mo. 325, was an action for damages, by a passenger, occasioned by starting the car with a jerk, thereby throwing his hand against and through one of the windows of the car, and cutting it. This court said: "With respect to the obligation of the defendant to the plaintiff as a passenger, it is sufficient to say that, whilst it is not an insurer of the safety of passengers, it is bound by its office, as such carrier, to exercise due care and vigilance, so as to safely transport

them. It must allow reasonable time for passengers to enter and leave its cars with safety, in the exercise of ordinary care. It should allow passengers reasonable time to enter and take a seat, if there be one, or a reasonable time to seize the straps furnished for passengers when standing; and while it may start its car before the passenger has had time to take a seat, or secure his hold on the strap, it must exercise the utmost care in starting so as not to jar or upset him.'' This case was cited approvingly in Bertram v. Railroad, 154 Mo. l. c. 662, and substantially the same principle declared to be the law by an instruction given to the jury. [Idem, l. c. 651.]

These rules regulating the care to be exercised by railroads in allowing passengers a reasonable time safely to alight, apply with equal, if not more, reason and force to the running of elevators, for the danger of starting before the passenger has boarded or left an elevator, is even greater than it is of starting a train under similar conditions.

The evidence in this case shows that the plaintiff was accustomed to riding on elevators. If the defendant's showing be true, that after the doors were closed, after the elevator had started and had gone upward three or four feet, the plaintiff rushed quickly forward, and that to keep her from being injured the operator threw his arm out to force her back, and she slipped and fell, it must be equally true, either that she was suddenly bereft of reason in attempting to leave the elevator through a closed door, when the elevator was three or four feet above the fourth floor, or else that the operator must have used an unnecessary amount of force when he threw out his arm or she would not have slipped and fallen. The defendant's showing may be the true account, and the verdict of the jury declares it to be so, but if it is, certainly it is a case without a parallel or a precedent in the books, or in the experience of the average citizen. People in their sound minds do not

attempt to leave an elevator or a car or a room through a closed door, and the defendant's evidence is that the door was closed before the elevator was started, and before the plaintiff attempted to leave or indicated by word or motion any desire to leave the elevator, and that she did not start to leave the elevator until it was three or four feet above the fourth floor. But if all this be conceded, it must still be true that she could not leave the elevator while the door was closed. And if she could not do so, or if she could not be hurt while attempting to do so, it is not at all clear why it was necessary for the operator to use so much force in preventing her from hurting herself as to throw her down or cause her to slip down and be hurt.

The rule laid down in Chitty v. Railroad, 148 Mo. 64, that a plaintiff can not count upon one cause of action and recover upon another, especially when proof of the latter necessarily negatives the existence of the former, is invoked. But that rule has no application here, for the essential cause of action here asserted is that the plaintiff was received as a passenger in the defendant's elevator, to be carried to the fourth floor of its building, and that she was injured through the negligence of the operator of the elevator in not allowing her a reasonable time to alight from the elevator at that floor. The only substantial difference between the parties here is, not whether she was allowed a reasonable time in which to alight as the plaintiff claims is her right, but whether she was allowed time to indicate a desire to alight as the defendant claims is her right. There is no conflict in the evidence that she was not allowed a reasonable time in which to alight, but the defendant says she was allowed a reasonable time in which to indicate a desire to alight, before the elevator was started, and that she did not indicate such a desire by word or motion. And the defendant's instructions told the jury that if this was true, the defendant was guilty of no negligence and the plaintiff was not entitled to recover.

On the other hand, the plaintiff's instructions told the jury that she was entitled to recover if she was not allowed a reasonable time in which to alight. Therefore, the instructions given for the plaintiff and the defendant are wholly inconsistent, and those given for the defendant are erroneous, in that they only require the operator, after he has been notified by one passenger to stop at a designated floor, to stop long enough to enable that one passenger to alight, and then to pause only long enough "to enable the other passengers to indicate their desire to alight at that floor."

When any one passenger directs the operator to stop the elevator at a certain floor, it is not necessary for every other passenger who desires to get off at that floor to repeat the direction, but it is the duty of the operator, when so directed by any passenger, to stop at such floor for a length of time sufficient for that passenger and any other passengers who desire to alight at that floor to reasonably do so, and before again starting the elevator it is the duty of the operator to use "reasonable care to ascertain if there are other persons in the act of getting off."

This is particularly true in this case, for the plaintiff was under the escort of Mr. Hall. When they got in the elevator he stood aside and "waved" or showed her in first, all of which was done in full view of the operator. They two were together, she under his escort. There were only two other persons in the elevator. When Mr. Hall directed the operator to stop at the fourth floor, it was manifestly intended as a notice that both wanted to leave the elevator at that floor. It was unnecessary and would have been very unusual for the lady to supplement the order of her escort to stop at that floor. He naturally left the elevator first, she followed him as quickly as she could. It was not necessary for her to indicate a desire to leave the elevator in any other manner than to act with reasonable diligence, but not necessarily with hurry or confusion. It was the

duty of the operator to ascertain, before again starting, whether she was in the act of leaving.  He had no right to expect her to indicate a desire to leave in any other manner, nor was he entitled to demand from her any word or motion (other than the act aforesaid) of desire to leave.

The defendant's instructions are all predicated upon the existence of such a duty on the part of the plaintiff and of such a right on the part of the operator, and hence are erroneous.

The judgment of the circuit court is therefore reversed and the cause remanded to be proceeded with in accordance herewith.  All concur.