## BECKER, Respondent, v. LINCOLN REAL ESTATE & BUILDING COMPANY, Appellant.

### St. Louis Court of Appeals, April 10, 1906.

1. **COMMON CARRIERS: Elevators.** This case was before the Supreme Court. See Becker v. Lincoln Real Estate & Building Co., 174 Mo. 246, where all the facts are related.

2. **APPELLATE PRACTICE: Change of Venue: Signing Transcript.** Where a change of venue was awarded and a transcript sent in proper form and properly attested, except that the signature of the clerk was omitted, and no objection made in the trial court to the transcript, an objection to the jurisdiction, on the ground that the transcript was not authenticated, will not be considered on appeal.

3. **COMMON CARRIERS: Elevators: Negligence: Prima Facie Case.** In an action for injuries received by plaintiff on an elevator, where the evidence tended to show the elevator stopped at the floor where plaintiff wished to alight, the automatic doors swung open, and while the elevator was motionless, even with the floor, she attempted to step out, when the elevator suddenly shot upward and she was jerked backward and her foot caught between the elevator and the sides, producing the injury, the question whether the defendant's servant in charge of the elevator was negligent in starting it before she had time to alight was for the jury.

4. ————: ————: **Degree of Care.** A carrier of passengers by elevator is not the insurer of the safety of passengers, but is required to exercise the highest degree of care to insure their safty.

5. ————: ————: **Negligence: Proximate Cause.** In an action for injuries caused to plaintiff by the premature starting of the elevator in which she was riding, before she had time to alight, where the evidence tended to show that as she started to step out, the elevator was started upward and she was jerked back-

ward so that her foot was caught and crushed, although the jerking of the plaintiff backward might have been the immediate cause of the injury, the negligent act in starting the elevator was the proximate cause, and an instruction based upon that theory was not erroneous.

6. ———: ———: **Duty of Operator.** It is the duty of the operator of an elevator to stop at the floors where passengers desire to alight a reasonable time for them to alight, or indicate their intention to alight, and if the operator knows or has reason to know that a passenger is in the act of leaving the elevator, he violates his duty in starting it, although he has already waited a reasonable time.

7. ———: ———: ———: **Proximate Cause.** In an action for injuries received by the premature starting of the elevator on which plaintiff was riding, before she had time to alight, an instruction which defined the duty of the operator in allowing time for passengers to alight, and declaring the omission of such duty negligence on the part of the defendant, was incomplete in failing to require a finding by the jury also that such omission of duty was the proximate cause of the injury sued for.

8. **PERSONAL INJURIES: Married Woman: Earnings of Separate Labor.** A married woman whose husband has abandoned her is entitled to the earnings of her separate labor, under section 4340, Revised Statutes 1899, and may recover for the loss of the same in an action for personal injuries.

9. ———: ———: **Disability to Earn Money: Evidence.** In such an action for personal injuries, in the absence of any proof that the plaintiff had ever earned money by her separate labor or had performed any labor, an instruction authorizing a recovery for damages on account of physical disability to earn money was erroneous.

10. ———: ———: **Disability to Labor.** But in such an action she might recover damages on account of disability to labor, distinct from any loss of earnings entailed, because of the mental suffering resulting from such inability, though she could not recover damages for loss of time in the performance of household duties, because such damages are recoverable only on the theory that the household services of a married woman are due her husband.

Appeal from St. Louis County Circuit Court.—*Hon. J. W. McElhinney,* Judge.

REVERSED AND REMANDED.

*Seddon & Holland* for appellant.

The court erred in giving instruction 17 at the instance of plaintiff. Said instruction is as follows, to-wit: "For any impairment of health and strength and physical disability to labor and earn money by her separate labor which the jury may believe from evidence the plaintiff has sustained by reason of said injuries and directly caused thereby." Kroner v. St. Louis Transit Co., 107 Mo. App. 41, 80 S. W. 915; Pryor v. Railway, 84 Mo. App. 267; Slaughter v. Railway, 116 Mo. 269, 23 S. W. 760; Brake v. Kansas City, 100 Mo. App. 611, 75 S. W. 191; Stoetzle v. Swearingen, 96 Mo. App. 592, 70 S. W. 911; Wallis v. City of Westport, 82 Mo. 522; O'Brien v. Loomis, 43 Mo. App. 29; Baker v. Railway, 118 N. Y. 533; Seaboard Manufacturing Co. v. Woodson, 86 Ala. 278; Dysart-Cooks v. Reed, 89 S. W. 591.

*A. R. Taylor* for respondent.

(1) The passenger elevator is governed by the laws of common carriers of passengers. Lee v. Knapp Co., 155 Mo. 641, 56 S. W. 458; Becker v. Lincoln Co., 174 Mo. 250, 73 S. W. 581; Luckel v. Century Co., 177 Mo. 628, 76 S. W. 1035. (2) The next point made by appellant is that the instruction given for the plaintiff, defining the elements of damage to be considered by the jury, is erroneous. The particular objection is that it allows the jury to consider as an element of damage the "physical disability to labor and earn money by her separate labor." (3) The evidence, without dispute, shows that prior to plaintiff's injury, about five years, the plaintiff's husband had abandoned her for another woman. She was thus left to her own resources. He had no claim upon his wife's duties or services. She certainly is not compelled to render services for a man who has abandoned her for five years and is living in adultery. Section 4330, Revised Statutes 1899, so provides. Under this statute all the wife's earnings during

the period of abandonment are her own.    (4)    If any number of experts had given their opinion upon the question as to the value of her work they would not have been bound by such opinion.   The Supreme Court, in many cases, has so held. City v. Butterfield, 89 Mo. 650; City v. Ranken, 95 Mo. 192, 8 S. W. 249; Cosgrove v. Leonard, 134 Mo. 426, 33 S. W. 777, 35 S. W. 1137.

GOODE, J.—This is a damage case for a serious personal injury sustained by plaintiff; she alleges in consequence of the negligent operation of an elevator in charge of defendant's servant.   The casualty happened in the city of St. Louis on April 10, 1900.   Defendant owns a lofty building in St. Louis and several elevators ply between the different stories.   Plaintiff entered an elevator just prior to her injury in company with an attorney to whose office she was going on business.   The attorney notified the operator to let them off at the fourth floor.   When that floor was reached the elevator was stopped, the automatic gates opened and the attorney, who stood just at the side of the door, stepped out and proceeded along the corridor toward his office.   According to plaintiff's testimony she was standing immediately behind the attorney and followed him closely as he left the elevator.   She stated that when she attempted to step into the corridor the elevator was even with the floor and the doors were wide open; that just as she stepped out she felt herself hauled back violently and her foot was caught, severely injuring her foot and limb. Some other witnesses swore plaintiff attempted to leave the elevator when the gates were about eighteen inches apart and closing and the elevator was three feet above the floor; that is to say, after it had ascended from the fourth floor toward the fifth.   There was testimony that when plaintiff made this movement the operator of the elevator, in order to prevent her from rushing out of the elevator, which was in motion, threw his arm in front of her, causing her to fall backward.

This case was in the Supreme Court on an appeal from a former judgment and all the facts are related in the opinion then given (174 Mo. 246).

Besides a general denial, a special defense of contributory negligence on the part of plaintiff was interposed. From a judgment in favor of plaintiff, defendant appealed to this court.

The action was originally instituted in the circuit court of the city of St. Louis, and the first trial and judgment were in that court. After the reversal of the case by the Supreme Court, plaintiff applied for a change of venue, which was granted, and the cause sent to the circuit court of St. Louis county. A transcript of the record was transmitted in due time to the latter court by the clerk of the circuit court of the city of St. Louis. The transcript was in good form and was attested by the proper certificate duly authenticated by the seal of the court awarding the change of venue; but the signature of the clerk of that court was omitted, doutless by inadvertence. This omission is made the basis of a contention that the circuit court of St. Louis county was without jurisdiction to try the cause. No objection was made to the condition of the transcript in that court. If there had been, it is reasonable to presume the court would have had the clerk of the circuit court of the city of St. Louis sign the transcript. Defendant went to trial without raising in any manner the point it now presses and which we think is wholly untenable on the appeal. Apposite authorities are Smith v. Monks, 55 Mo. 106; Henderson v. Henderson, 55 Mo. 534; Levin v. Railroad, 140 624.

Defendant asserts there was no evidence to sustain the allegation of negligence contained in plaintiff's petition, and, therefore, the jury should have been directed to return a verdict against her. The negligence charged was that while the elevator was standing at the fourth floor of the building to enable passengers to alight, and while plaintiff was proceeding to alight, but before she

had time or an opportunity to do so, defendant's servant in charge of the elevator "negligently caused and suffered said elevator to be started upward, whereby plaintiff was caused to be jerked and fall so that her left foot and ankle were caught and crushed between said elevator and the gates and side thereof." Plaintiff's own testimony would have to be ignored to say there was no evidence to sustain that allegation of negligence. She swore positively that the elevator was motionless and even with the floor of the corridor when she attempted to leave it immediately behind her attorney; that the doors were wide open for the exit of passengers and just as she stepped out of the door, with her foot raised to put it down on the floor of the corridor, the elevator started and she felt herself hauled violently backward with the result that her foot and leg were crushed. If the machine was motionless when plaintiff attempted to step out, and she swore it was, then beyond question her injury was due to negligently starting it too soon. It is true that in testifying plaintiff, used the expression that she was "hauled" backward instead of "jerked" backward, as charged in the petition; but the difference between the two words used in this connection is trifling. It was urged on the appeal, in the Supreme Court that no negligence on the part of defendant was shown, but that court must have entertained a different opinion; for it reversed the case on plaintiff's appeal and remanded it to be retried. We have been unable to detect any material difference between the evidence contained in the present record and the statement of facts given by the Supreme Court. We overrule the point that there was no evidence for the jury.

The first instruction given for plaintiff held defendant's servant in charge of the elevator to be under the duty of using the highest degree of care of a practical and skillful elevator operator, and is said to have exacted a higher care than the law requires. The opinions rendered by the Supreme Court in Goldsmith v. Holland

Building Co., 182 Mo. 597, 81 S. W. 1112; Luckel v. Century Bld. Co., 177 Mo. 637, 76 S. W. 1035; and the one on the first appeal of this case, show that the instruction was correct. The care required in the operation of elevators was dwelt on in the first of the cases cited and it was held that though a carrier by elevator is not an insurer of the safety of his passengers, he "is required to exercise the highest degree of care in everything calculated in insure" their safety.

The first instruction is said to be erroneous, too, in submitting to the jury an issue regarding whether or not, while plaintiff was in the act of stepping from the elevator, defendant's employee in charge of it, caused or suffered the elevator to start, thereby causing plaintiff's leg and foot to be caught and injured. The gist of this assignment is that evidence was lacking to show plaintiff's foot and leg were caught in consequence of prematurely starting the elevator; and, on the contrary, all the evidence showed the catching of her limb was due to a push of the operator's arm which caused her to fall backwards, thereby thrusting her foot forward so that it was caught between the floor of the ascending car and the grating of the metal door which opened into the corridor and was attached, not to the elevator car, but to the floor of the corridor. The push of the operator may have been the immediate cause of plaintiff's foot getting caught; yet if she swore truly the starting of the elevator as she was in the act of stepping out, caused her to be in danger and induced the operator to push her backward. The negligent act of starting is, in that event, to be regarded as the proximate cause of the injury. [Cases cited in Hensler v. Stix, 113 Mo. App. 162, 178, 88 S. W. 108.] And on this criticism of the instruction it may be remarked that the evidence of plaintiff would warrant the inference that the movement of the elevator as she was leaving it, caused her to fall and thrust her foot between the floor of the car and the bottom of the adjacent door.

Two points are made against the second instruction for plaintiff. The crucial question in the case was whether the casualty was due to prematurely starting the elevator upward while plaintiff was stepping from it into the corridor, or to her forgetting to leave while it was discharging passengers at the floor and afterwards rushing to the door when it began to ascend and the gates to close. Therefore, it was important for the instructions to define, with precision, the operator's duty to afford passengers who wished to leave the elevator at the fourth floor an opportunity to do so in safety, and plaintiff's duty to leave, or signify an intention to leave, within a reasonable time after the elevator had stopped, and to observe ordinary care in leaving. The second instruction for plaintiff was inaccurate in stating that it was the operator's duty to stop at the floor a sufficient length of time to enable any passenger desiring to alight, "in the exercise of ordinary care, to do so." This is an overstatement of what the law required of the operator. He was bound to hold the car a reasonable time for passengers to alight or indicate their intention to alight. This was the rule stated by the Supreme Court, in the Luckel and in the present case. [177 Mo. 608, 629; 174 Mo. 246, 253.] Of course, if a passenger was in the act of leaving and the operator knew, or ought, in reason, to have known the fact, he had no right to start the elevator, even though it had already waited a reasonable time. All we are to be understood as saying is that after an elevator has been held at a floor a reasonable interval for passengers who desire to leave it to do so, it may then be moved away from the floor, unless some passenger is known, or ought to be known, to be about to alight. An instruction given for defendant largely obviated any misleading effect of the foregoing fault in plaintiff's second instruction. The latter instruction charged that it was the duty of the elevator man to use reasonable care, before stating the elevator upward, to ascertain if

there were other passengers in the act of getting off, and if he failed of the precaution, he was negligent. That charge was not so phrased as to connect with this case as closely as it should have been. It is incumbent on a person running an elevator to use care to ascertain before he starts from a floor, whether or not passengers are in the act of alighting and will be endangered by starting. [174 Mo. 255.] But an omission to exercise caution in that regard did not constitute negligence toward plaintiff or a ground for a verdict in her favor, unless, it was the proximate cause of her injury. The jury should have been required to find, not only that the operator omitted the precaution, but that plaintiff was hurt in consequence of the omission.

The court gave this instruction on the measure of damages:

"If the jury find for the plaintiff, they should assess her damages at such sum as they may believe from the evidence will be a fair and just compensation to her: First. For any pain of body or mind which the jury may believe from the evidence she has suffered or will suffer by reason of her injuries and directly caused thereby. Second. For any expenses necessarily incurred or medicines, medical or surgical attention, which the jury may believe from the evidence the plaintiff has incurred by reason of her injuries and directly caused thereby. Third. For any impairment of health or strength and physical disability to labor and earn money by her separate labor which the jury may believe from the evidence the plaintiff has sustained by reason of said injuries and directly caused thereby."

The third subdivision of that instruction must be held to be erroneous because there was no evidence on which to base an award of damages to plaintiff on account of physical disability to earn money by her separate labor in consequence of her injury. Plaintiff was a married woman, but her husband had abandoned her for another woman previous to the accident. We think that

under our present statute she would be entitled to the earnings of her separate labor. [R. S. 1899, sec. 4340; 1 Joyce, Damages, sec. 318.] The difficulty in the case is the lack of proof that plaintiff ever had earned money by her separate labor or had performed labor of any kind, even domestic duties. The court authorized no assessment of damages for the inability of plaintiff to attend to household tasks or for loss of time from such tasks; and it is doubtful if she became entitled to recover damages on that score, instead of her husband, because he had abandoned her. The rule is that a married woman cannot recover the value of time lost from domestic work, the right of such recovery being in the husband. [Kroner v. Transit Co., 107 Mo. App. 41, 36, 80 S. W. 915.] In Thuringer v. Railroad, 24 N. Y. Supp. 1087, it was held that a married woman who had been separated from her husband for twelve years could not obtain damages in a personal injury action for loss of time from household work. The decisions are not luminous on the question of what damages besides those given for physical and mental suffering, a married woman may obtain in an action for an injury to her person. It is clear that, as stated above, she cannot recover for time lost from her ordinary household tasks; and it has been held error to allow an award of damages for her inability to perform her ordinary avocations, on the theory that the ordinary avocations of a wife are household services and due to her husband. [Plumber v. Milan, 70 Mo. App. 598, 602; Wallis v. Webster, 82 Mo. App. 522.] It has also been held proper to instruct the jury to consider, in estimating damages, the fact that by the injury the ability of a married woman to work or labor has been diminished. [Perrigo v. St. Louis, 185 Mo. 276, 84 S. W. 30.] The principle of these decisions is that impaired ability to work is in itself an injury and a deprivation, distinct from any loss of earnings it entails and, therefore, the sufferer ought to be indemnified. In the decision last cited the Supreme Court approved

the rule on this subject in force in Georgia and Massachusetts, in which States the courts treat disability to work as a part of the mental suffering resulting from an injury and as due to a consciousness of impaired power to take care of one's self. Regarded in that light it ought to be recovered for by the patient, and the cases hold it may be definitely called to the jury's attention in giving instructions on the measure of damages. [Powell v. Railroad, 77 Ga. 192, 200; Atlanta St. Ry. Co. v. Jacobs, 88 Ga. 647; Metropolitan R. R. v. Johnson, 90 Ga. 500; Jordan v. Railroad, 138 Mass. 425.] The principle on which a married woman is allowed compensation for impaired physical ability to labor would include the mental distress, injury, deprivation—call it what you will— incident to inability to do any sort of labor which she was able to do before being injured, and ought to cover incapacity for household work as much as any other; though for *loss of time* from household service, as distinguished from disability to perform it, the right of action would remain in the husband. In view of the recent opinion of the Supreme Court in Perrigo v. St. Louis, we hardly would feel justified in condemning the instruction given in the case at bar, because it authorized damages for physical disability to labor. But it authorized damages for disability to earn money by her separate labor, and there was no proof that plaintiff had any business or avocation in which she had earned or could earn money. She may have been a person of leisure, and in that case her impairment of capacity would be compensated by damages for disability to work. If testimony had been given to show she had a vocation and what she could probably earn in it, her disability to pursue it would have been a proper item of damages. [1 Joyce, Damages, chap. 60, secs. 227, 229 and citations; 4 Sutherland, Damages, sec. 1246; Atlanta, etc., R. R. Co. v. Newton, 85 Ga. 517, 527; Atchison, etc., R. R., v. Chance, 57 Kas. 40, 47.] In the case at bar there was no basis for compensation to plaintiff for disability to earn

money, as evidence was not introduced having any tendency to prove her earning capacity in sound health.

The judgment is reversed and the cause remanded. All concur.