LOTTIE WOLFE, RESPONDENT, v. KANSAS CITY, MISSOURI, APPELLANT. —60 S. W. (2d) 740.

Kansas City Court of Appeals. May 1, 1933.

*John C. Bates* and *Cowgill & Popham* for respondent.

*George Kingsley* and *John J. Cosgrove* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $5,000, and defendant has appealed.

The facts show that, on December 24, 1928, plaintiff, a married woman, was injured by falling on a sidewalk near Fifteenth and Oakley streets, in Kansas City, Missouri; that she fell as a result of slipping upon an accumulation of ice and mud which had been deposited upon the walk from an embankment of earth adjoining; that as a result of the fall plaintiff sustained a multiple fracture of the upper third of the femur of the left leg; that the fracture resulted in a shortening of the leg and an inability to place the foot

firmly upon the ground while standing or walking in a natural manner; that she was compelled to use crutches for a period of two years after her fall and that she could only "take a few steps" without the aid of one crutch at the time of the trial; that she had always been able to do her own work and reared two boys, but that she was unable to do any of her work after the accident. After her first husband's death, plaintiff, in 1915, married her present husband. Before she was re-married she earned her own living and, for a time while her first husband was alive, she assisted him in his janitor work, doing all of that work at times. Since her re-marriage she has kept house for her husband and family.

Plaintiff was seriously and permanently injured and there is no complaint by defendant that the verdict is excessive, the sole contention being that the court erred in giving plaintiff's instruction No. Six, which reads as follows:

"The court instructs the jury if your verdict is for plaintiff Mrs. Wolfe and against defendant Kansas City you will take into consideration the nature and extent of all injuries which you believe and find from the evidence she sustained as the direct and sole result of falling, if you so find she did fall on December 24, 1928, at the time and place referred to in evidence, whether or not such injuries, if you so find she was so injured, are permanent, all physical pain and mental anguish which you believe from the evidence she has suffered and all physical pain and mental anguish which you believe from the evidence she will with reasonable certainty hereafter suffer as a direct and sole result of her injuries so received in said fall, if you so find she was so injured, the impairment, if any, of her power to earn money which you believe from the evidence to be the direct and sole result of so falling at said time, if so, and if your verdict is for plaintiff it will be in such sum as a whole, stated in one lump sum, as you believe from all the evidence will fairly and reasonably compensate her for all injuries, if any, which you believe from the evidence she so received as a direct and sole result of so falling, if so, on December 24, 1928, at the time and place referred to in the evidence."

It is claimed that the instruction is erroneous for the reason that there is no evidence on which to submit the question of impairment of plaintiff's power to earn money. We have recently had the same question before this court. [See Estes v. K. C., C. C. & St. J. Ry. Co., 23 S. W. (2d) 193, 197.] That case involved compensation to be allowed a married woman, who was living at home and doing no work outside thereof. Plaintiff's instruction on the measure of damages submitted, among other things, "You will take into consideration . . . all pain and mental anguish which you believe from the evidence she will hereafter suffer. . . . and any impairment of her capacity to earn money. . . ."

The same criticism was made of that instruction as is made of the one in the case at bar. In answer to the contention made there we said:

"This criticism raises the question as to whether or not 'an impaired capacity to earn money' falls within the scope of permissible damages for 'impairment of the capacity to labor.' Capacity to. labor (physically or mentally) includes the capacity to earn money, and more. Our law is that recovery may be had for an impairment of the capacity to labor, although there may be in fact no actual loss of earnings, and to be deprived of the power to work is a source of in-injury, 'independent of the pecuniary benefits that such labor may confer.' [Kleinlein v. Foskin (Mo. Sup.), 13 S. W. (2d) 648, 658.] We thus see that plaintiff's instruction permitting recovery for impaired capacity to earn money was not as broad as plaintiff was entitled to have it."

Defendant admits, in effect, that if what we said in the Estes case is the law, there is no merit in its contention here, but insists that the holding in the Estes case is not good law. In view of this contention we will examine into cases cited by the defendant that were not before us in the Estes case.

The case of Perrigo v. City of St. Louis, 185 Mo. 274, involved an instruction very similar to the one in the case at bar. It had to do with the measure of damages suffered by a married woman. In the instruction in the Perrigo case the jury were permitted to take into consideration "impairment of ability, if any, of the plaintiff to work or labor." As was said in the opinion in that case, 1. c. 289:

"The jury were not authorized by the instruction in the case to allow damages for loss of time or services. They were simply told in determining the extent of her injuries they might take into consideration any diminution of her power to work. To impair the power of any person, whether of body or mind, is an injury to personal right wholly apart from any pecuniary benefit that might be derived from the exercise of the power."

It will be noted that the wording of the instruction in the case at bar is not exactly like that in the Perrigo case, for in this case the jury were not told that they might take into consideration the diminution of plaintiff's power to work but her "power to earn money." The defendant in this case, as did the defendant in the Estes case, contends that there is a radical difference between the power or capacity to work and the power or capacity to earn money and cites several cases that, upon their face, seem to uphold its contention but, we think, are distinguishable from this case.

There is a distinction between the power or capacity to work and earn money and loss of time, or money that one probably will lose in the future on account of physical or mental disability. Loss of

time, or what one may reasonably be expected to earn in the future, comes under the head of the amount of loss of time or earnings, or the fruits or gains from the power or capability to work and earn money. The authorities have not always made this distinction plain but, without stopping to analyze the matter, many courts have dealt with the two as the same thing. The wages that a minor child may be capable of earning in the future, prior to his majority, belong to the father and cannot be recovered by the child. Neither is the wife entitled to recover for time lost, or for the impairment of her ability to perform her duties, as a housewife. [Hebenheimer v. City of St. Louis, 189 S. W. 1180, 1183.] If her "earning capacity" is taken in that sense then the wife is not entitled to recover for loss of earning capacity. However, the loss of the power to earn money or, earning capacity, has another meaning and that is the present power or ability to earn a living or earn money, which is inherent in every individual, although that power has never been exercised and there is no present intention to exercise it, because not necessary. The capacity to earn money in this sense is included in the term "capacity to work." As was said in the Estes case: "Capacity to labor (physically or mentally) includes the capacity to earn money and more."

Compensation for incapacity to labor or work is not founded on the theory that such incapacity is *merely* a matter of discomfort, inconvenience or annoyance, as was said in some of the earlier cases and, for that reason, compensation as a part of the general injuries received. [See Cullar v. M. K. & T. Ry. Co., 84 Mo. App. 340, 346.] Inability to work is something more than a discomfort, inconvenience and annoyance. The mere inability to move about or to use a movable member of the body is a discomfort, inconvenience or annoyance. Therefore, inability to play or engage in any active diversion comes under the same head. While inability to work, mentally or physically, is a discomfort, inconvenience and annoyance, unless such inability is compensated upon the theory that it results in no more than a limitation of the power or disposition to move around as one does in play, it is entirely logical to say that it is merely a discomfort, inconvenience and annoyance. However, there is quite a difference in one's loss as a result of inability to work and inability to play. The main difference between work and play is that, in the former, the activity is engaged in in order to exist or live and in the latter the activity is entered into merely as a pastime. Therefore, any activity engaged in, other than play, is work or the exacting of a living from one's surroundings or environment. This, of course, includes the earning of money, which is merely a medium of exchange for work where one works for another.

So the inability to work or labor, physically or mentally, is something more than discomfort, inconvenience or annoyance. It is that plus the inability to, wholly or partially earn a living, either by

working for others at a wage or salary (money) or for one's self. Viewing it from this standpoint, the inability to earn money is included in the ability to work. It was said in Becker v. Lincoln Real Estate Co., 118 Mo. 74, 83, 84, that:

"The Supreme Court approved the rule on this subject in force in Georgia and Massachusetts, in which states the courts treat disability to work as a part of the mental suffering resulting from an injury and as due to a consciousness of impaired power to take care of one's self."

It is just as much a source of mental anxiety for one to realize that he cannot earn a living, in whole or in part, as to know that he cannot perform work, assuming that there is some logical difference between the two.

It is stated in Sutherland on Damages (4 Ed.), p. 4727:

"It seems plain that wrongful interference with any capacity or function of a human being should be compensated for, aside from any existing need for the exercise of such capacity or function. The vicissitudes of life may call upon any person to put forth every effort to serve himself or those who are dependent upon him. In many if not all cases of serious personal injury the public may have an interest, and its welfare may require that the injured person be compensated for the wrong done him, thus in a measure lessening the demand which may be made upon the public. Impaired ability to work is in itself an injury and deprivation, distinct from any loss of earnings it entails and the sufferer is entitled to compensation for it. It may be treated as part of the mental suffering resulting from the injury and as due to the consciousness of *impaired power to care for one's self*. In the nature of the case the sum which will compensate for such damage is not ascertainable by mathematical computation; it must be fixed by the jury with respect to the evidence and the probabilities, and should be sufficient to compensate therefor." (Italics ours.)

What mental suffering is more poignant than the realization that, if the occasion arises, one cannot earn a living?

Defendant mainly relies upon the case of Davidson v. Transit Co., 211 Mo. 320. That case involves the use of the words "impairment of earning capacity," in the sense of *pecuniary benefits* in the future to be derived from the exercise of the power to work for a living or earn money. An analysis of what the court said in that opinion clearly shows that the court gave to the words used in that instruction, under the peculiar circumstances of that case, the meaning of probable loss of time or earnings in the future, rather than the present power and ability to work for a living or earn money. The instruction in that case reads as follows, l. c. 344, 345:

"The court instructs the jury that, if under the evidence and instructions of the court, they find in favor of plaintiff, they should

assess her damages at such sum as they believe, from the evidence, will be a fair compensation to her for the pain of body and mind, if any, which she has suffered, occasioned by her injuries in question, and for such pain of body and mind as in all reasonable probability she will suffer in the future, if any, occasioned by said injuries, and for such permanent injury, if any, to plaintiff's body and mind, as they may find were occasioned by said injuries, and for such probable impairment of earning capacity *in the future,* if any, as the jury believe were occasioned by said injuries, and for such sum, if any, as plaintiff has reasonably incurred for medical attendance occasioned by her injuries in question since July 1, 1903.'' (Italics ours.)

The court held the instruction bad for the reason that there was no evidence upon which to predicate a recovery for plaintiff's ''probable impairment of earning capacity *in the future.*'' (Italics ours.) The court pointed out that the petition specifically alleged, in dollars and cents, what her capacity was for earning money, stating, l. c. 345, 346:

''It is there averred that 'before her said injuries she was a strong, healthy, vigorous person, capable of earning at least $50 per month, and would and could have earned that sum per month ever since July 1, 1903, and in the future, had she not been injured, as aforesaid by the negligence of the defendant.' The conclusion is irresistible that the instruction complained of, in which the impairment of plaintiff's earning capacity was submitted to the jury, was predicated upon the allegation in the petition as above suggested. In other words, plaintiff averred that her earning capacity was at least $50 per month and this instruction authorized the jury to compensate her in dollars and cents for the alleged impairment of her capacity to earn such amount.''

The court distinguished that case from the Perrigo case, stating, l. c. 351, 352:

''To fully appreciate the distinction between these two cases it is well to keep in mind the foundation upon which plaintiff predicates her right to have the jury consider the element of damages now under consideration. It is specially averred in the petition what her earning capacity was before the injury and what it would be in the future if she had not received such injury, and there can be no escape from the conclusion that the instruction challenged in this cause is based upon such specific allegation, and it plainly tells the jury that they may compensate her for any impairment of such earning capacity. In other words, it in effect tells the jury that plaintiff claims that her earning capacity was at least $50 a month prior to the receipt of her injuries, and if you find from the evidence that by reason of the injuries received she is only able to earn a much less sum, then you are authorized to compensate her for such impairment to her earning capacity.

"It will be observed in the Perrigo case that the jury are not directed that they are authorized to compensate plaintiff for any diminished ability to work or labor caused from the injuries received, but the jury are simply told that if by reason of the injuries the ability of plaintiff to work or labor has been diminished they may take such fact into consideration in assessing the amount of her damages. . . .

"The court in the case at bar did not limit the *consideration* of the jury to the mere impairment of the power to work or labor, which was a personal right, but the instruction in effect *directed* them that they were authorized to compensate her for any *loss of pecuniary benefit* that might be derived from the exercise of the power to work or labor." (Italics ours.)

In the Davidson case the jury were positively directed to assess damages for permanent injuries to plaintiff and, in addition, damages for probable impairment of earning capacity "in the *future*." If the instruction had intended to submit merely present impairment of earning capacity, rather than probable future loss of time, then, it was clearly erroneous, because it directed double compensation. Present impairment of earning capacity is included in the compensation for the injuries themselves and the submission of a recovery for such injuries plus such impairment is clearly a submission of double compensation. [Western Atl. R. R. v. Smith, 145 Ga. 276; Becker v. Lincoln R. E. Co., supra, l. c. 84; Louisville & N. R. Co. v. Sinclair (Ky.), 188 S. W. 648.] So the court in the Davidson case was right in construing the language in the in the instruction in that case to mean compensation for the probable loss of time or earnings in the future, or in other words, *special damages* for which plaintiff was entitled to compensation, in addition to her personal injuries, provided she had introduced evidence tending to show what her probable loss of earnings in the future would have been.

The instruction in the case at bar is not like that in the Davidson case in this respect. The instruction before us tells the jury to "take into consideration . . . all injuries," including impairment of power to earn money, and concludes by stating that the verdict of the jury should be for such sum as a whole "as you believe from all the evidence will fairly compensate her for all her injuries, if any." Clearly no double compensation was allowed under the instruction before us. [Garner v. K. C. Bridge Co., 194 S. W. 82.]

It is true that, in the Davidson case, no distinction is attempted to be made of the present ability to earn a living (which includes the ability to earn money) and probable loss of earnings in the future; but no such distinction was necessary in that case, as the instructions there submitted the matter as though probable loss of future earnings was meant by the language used therein taken in connection with the pleading. That case is no authority, on the question now before us,

for anything further than that where the language, "probable impairment of earning capacity in the future," is used in an instruction in the sense of probable loss of time or earnings in the future, there must be evidence to support such special damages. We do not think that the Davidson case is necessarily a holding that there is a distinction between "probable impairment of earning capacity" or impairment "of power to earn money," used in the sense of present loss (rather than in the sense of loss of time and earnings *"in the future"*), and "impairment of capacity to work or labor." We might say that the Davidson case has been disapproved, although in relation to another matter than the one now vexing us. It is now held that there need be no evidence of loss of time to authorize a recovery, in some amount, for that time. [Strotjost v. St. L. Merchants' Term. Ry. Co., 181 S. W. 1082, 1084; State ex rel. v. Reynolds, 257 Mo. 19.]

We think that the decision of the Supreme Court in the case of Kleinlein v. Foskin, 13 S. W. (2d) 648, recognizes the distinction that we are attempting to make. In that case, l. c. 657, 658, the Supreme Court was dealing with a question of pleading and it approved an instruction that did not submit the matter of impairment of capacity to perform *general* work or labor, but "any impairment of plaintiff's ability to engage in his business as a florist," stating that such an instruction came under the definition of impairment of capacity to labor. There was evidence as to the amount of plaintiff's loss of his floral business as a result of his injuries and it is hard to see how any jury could do otherwise, in reading the instruction, than consider impairment of plaintiff's ability to earn money in his floral business. That, evidently, was the court's view of it, because it cited with approval the case of Steinkamp v. Chamberlain, 294 S. W. 762, 764, a decision of the St. Louis Court of Appeals. There is no question that, if the Supreme Court approves the ruling of the St. Louis Court of Appeals in the Steinkamp case, it would approve our ruling in this case. In other words, the approval of the Supreme Court of the Steinkamp case is authority for our holding. This will be readily seen by an examination of what was said in the Steinkamp case, l. c. 764: (And it was that page of the opinion that the Supreme Court expressly referred to).

"Only one instruction was given on behalf of plaintiff. It related exclusively to the measure of damages. It is complained of by the defendant because it allows the jury to compensate plaintiff for diminution of earning capacity, whereas, since there was no showing that plaintiff had been emancipated, his earnings during his minority belonged to his parents. It will be observed that the instruction does not allow the jury to compensate plaintiff for loss of earnings, but allows them to compensate him merely for diminution of his capacity to earn money, or, in other words, for diminution of his capacity to

984

perform labor of which earnings become the fruits. The courts make a distinction between the diminution of the capacity to labor and the loss of earnings, and they hold that a recovery may be had for the diminution of the capacity to labor, though there may, in fact, be no actual loss of earnings."

We have examined the other cases cited by the defendant. The court in the case of McNeil v. Cape Girardeau, 153 Mo. App. 424, treats the words, "impairment of her earning capacity or capacity to perform labor," in the sense of future loss of time or earnings and not in the sense of present incapacity or power to earn money. If the facts in that case cannot be distinguished from those in this case then, we are of the opinion that the former, in effect, was overruled by the Steinkamp case, which case, as before stated, seems to have the approval of the Supreme Court. The same may be said of the case of McDonald v. R. R., 165 Mo. App. 75, 111, cited by defendant. There the court expressly ruled that the instruction in that case submitted the "equivalent of compensation *for loss of time* occasioned by the injury and as such is an item of special damages which may not be recovered unless claimed in the petition." (Italics ours.)

In the case of Palmer v. Railroad, 142 Mo. App. 444, 457, cited by defendant, the instruction did not say anything about capacity to earn money or the like but submitted the matter of loss of time. It was held that there was no evidence upon which to submit loss of time.

If the instruction, in the case at bar, is ambiguous in not explaining fully what was meant by the words "power to earn money" and defendant was fearful that the jury might construe the instruction as allowing compensation for probable future loss of time and earnings, it was its duty to offer an instruction clarifying the matter. [Steinkamp v. Chamberlain Co., supra; Buehler v. Waggener Paint & Glass Co., 231 S. W. 283, 287.]

The judgment should be affirmed and it is so ordered, but deeming our decision in conflict with that of the Springfield Court of Appeals in the case of McNeil v. Cape Girardeau, supra, this cause is certified and transferred to the Supreme Court. All concur.