The State ex rel. Macklin v. Rombauer.

THE STATE *ex rel.* MACKLIN v. ROMBAUER *et al., Judges of the St. Louis Court of Appeals.*

IN BANC.

**Prohibition:** PRELIMINARY ORDER IN VACATION: SUPREME COURT. A judge of the supreme court may in vacation issue a preliminary order returnable into court to show cause why a writ of prohibition should not be issued.

*Prohibition.*

MOTION TO QUASH ORDER TO SHOW CAUSE OVERRULED.

The State ex rel. Macklin v. Rombauer.

*Frank M. Estes, Willis H. Clark* and *T. P. Bashaw* for relator.

(1) A preliminary rule of prohibition may be properly issued by a judge in vacation. Lloyd on Prohibition, ch. 9, secs. 1, 2, 3; *Iveson v. Harris*, 7 Ves. 251; 4 Inst. 81; *Mayo v. James*, 12 Gratt. 17; *Ex parte Ray*, 45 Ala. 15; *Ex parte Boothe*, 64 Ala. 312; High on Extra. Rem., sec. 785; Addison on Torts [Wood's Ed. 1881] sec. 1462; Const. Mo., art. 6, secs. 3, 12; Const. Mo., secs. 5, 8, amendment to art. 6; *State ex rel. v. Weeks*, 93 Mo. 499. (2) The court of appeals has no final or conclusive jurisdiction in cases involving the construction of the constitution of the state of Missouri. Const. Mo., art. 6, secs. 2, 3, 12; Const. Mo., secs. 5, 6, 8, amendment to art. 6; *State ex rel. v. Court*, 41 Mo. 44; *Thomas v. Mead*, 36 Mo. 248; *Vitt v. Owens*, 42 Mo. 512; *Trainer v. Porter*, 45 Mo. 336; *State ex rel. v. Court*, 97 Mo. 279; *State ex rel. v. Francis*, 95 Mo. 44; *Nall v. Railroad*, 97 Mo. 68; *In re McDonald*, 19 Mo. App. 370; *Ex parte Boenninghausen*, 21 Mo. App. 270; *State ex rel. v. Seay*, 23 Mo. App. 623; *State ex rel. v. Blakemore*, 104 Mo.; *State ex rel. v. Macklin*, 104 Mo.; *State ex rel. v. Lewis*, 76 Mo. 370; High Extr. Legal Remedies [2 Ed.] sec. 781; *Quinbo Appo v. The People*, 20 N. Y. 531; *State v. Ridgell*, 2 Bailey, 560; *North Bloomfield G. M. Co. v. Keyser*, 58 Cal. 315; *Mastin v. Sloan*, 98 Mo. 252; *State ex rel. v. Burckhartt*, 87 Mo. 533; Addison on Torts [Wood's Ed. 1881] sec. 1456.

*Given Campbell* and *O'Neil Regan* for respondents.

THOMAS, J.—The question now involved in this case has received our consideration, and we adopt the opinion of BARCLAY, J., as the opinion of this court sitting *in banc*, and order judgment to be entered accordingly.

We will add that our attention has been called to the statement made by Lloyd in his work on prohibition, page 5, as follows: "A writ of prohibition must be moved for in open court, and a judge at chambers has no power to grant it either in term or vacation." It is evident Mr. Lloyd here refers to the practice in the courts of common law, for on page 4 of the same work he uses this language: "The court of chancery may also grant a prohibition in all cases when the common-law courts are not sitting, for the court of chancery has power to grant a prohibition in vacation as well as in term time." And again on page 58 he says, "but the application to the court of chancery in vacation need not be made in open court, but the cursitor will, on a proper affidavit, grant a writ returnable into the queen's bench or common pleas."

By virtue of the provision in our constitution vesting all judicial power "as to matters of law and equity" in the courts of the state in the exercise of its original jurisdiction in prohibition, in the absence of any statute on the subject, this court may "shape its proceedings in such form as will preserve the effectiveness of the ancient remedy administered by the superior courts, either of law or chancery, in the common-law system of jurisprudence.

The judges of this court, having the combined powers of a chancellor and common-law judge, have authority to do what either might have done under the old system, in respect of this writ. SHERWOOD, C. J., and BARCLAY, GANTT and MACFARLANE, JJ., concur; BLACK and BRACE, JJ., dissent.

BLACK, J. (*dissenting*).—This is an application for a writ of prohibition against the judges of the St. Louis court of appeals.

On presentation of the petition to one of the judges of this court, he made a vacation order or rule upon the respondent to appear at the term of this court next following the date of the order, and show cause why the

writ should not be granted.   The respondents have filed a motion to quash the order, on the ground that the judge had no authority to make it, and this presents the only question to be noticed at this time.

The constitution gives this court power to issue, hear and determine writs of *mandamus*, etc., and other original remedial writs, and the late amendment says this court "shall have a superintending control over the courts of appeals by *mandamus*, prohibition and *certiorari*." The statute recognizes the right of a judge to issue an alternative writ of *mandamus*, and hence a judge of this court may issue such a writ returnable to court in session.   But we have no statute which gives, or even recognizes, the right of a judge to make a vacation order to show cause in prohibition.   Indeed, we have no statute regulating the procedure in such cases, except that the chapter of the practice act relating to amendments is made to apply to proceedings in prohibition. R. S. 1889, sec. 2116.

If a judge of this court has any power or authority to make the vacation rule, it must be found to exist at common law, for in the absence of any statute on the subject the principles and usuages of common law must govern.   Acts of parliament, passed during and subsequent to the fourth year of the reign of James I., have no force and effect in this state ( R. S. 1889, sec. 6561 ), and hence I cannot see what the English statutes cited in the majority opinion have to do with the question in hand.

A prohibition is a writ issuing properly only out of the court of king's bench, being the king's prerogative writ ; but, for the furtherance of justice, it may now also be had in some cases out of the court of chancery, common pleas or exchequer.   3 Bla. 112.   The account which Blackstone gives of the proceeding shows that it was inaugurated in court and not before a judge ; nor is there anything to be found in the mode of procuring the writ, as laid down by Lloyd, which gives any

countenance to the proposition that a judge could make the rule *nisi* in the vacation of the court. Lloyd on Prohib. 65. Indeed, that author says on page 5: "A writ of prohibition must be moved for in open court, and a judge at chambers has no power to grant it either in term or in vacation." A very full and complete enumeration of the powers of a single judge at chambers is given in 3 Chitty's Practice, beginning at page 19; and I find nothing there which leads to the conclusion that a judge at chambers could issue a rule to show cause in prohibition, unless that power was given by statute. Such an order does not appear to belong to those "minor and practical proceedings," which a single judge could make independently of any legislative authority, under the practice prevailing in the English courts.

It should be remembered also that judges of the courts in this state have never been supposed to possess the powers exercised by a single judge of the English high courts at chambers.

In the cases of *State, etc., v. Judge, etc.*, 22 La. Ann., 581, and in *State, etc., v. Judges*, 35 La. Ann. 1075, the court found statutory and constitutional authority for one of the judges to issue in vacation provisional writs of *mandamus* and prohibition. Those cases, in my opinion, furnish no authority whatever for the conclusion reached and asserted in the majority opinion. "It is a fundamental principle that courts can exercise judicial functions only at such times and places as are fixed by law, and that the judges of courts can enter no orders in vacation except such as are expressly authorized by statute." 12 Am. & Eng. Encyc. of Law, 14. As I understand the law, a judge of this, or any other, court in this state can make those orders in vacation, and those only which some statute says he may make.

There may be some virtue in the plea of necessity put forth and pressed in the majority opinion, but it is

The State ex rel. Macklin v. Rombauer.

a plea which should be addressed to the legislature and not to this court.

In my opinion the motion to quash should be sustained. Judge BRACE agrees with me in what I have said.

### DIVISION ONE.

BARCLAY, J.—A verified petition for a writ of prohibition was presented by relator to one of the judges of the supreme court, during vacation thereof, upon consideration of which, the judge made an order upon defendants, composing the St. Louis court of appeals, to appear at the opening of the next ensuing term of the supreme court to show cause why the writ prayed should not be issued. On the opening of the following term, a motion was made to quash the preliminary vacation order as being unauthorized by law.

The petition for prohibition proceeded on the theory that the St. Louis court of appeals had no jurisdiction to entertain or adjudicate upon an original information in the nature of a *quo warranto* (then pending before it) against the present relator, the decision of which cause (as was alleged) involved a construction of the constitution of this state.

The duty has been assigned me of giving expression to our views on the question which this case presents, namely, whether a proceeding in prohibition, may be begun during vacation, by an order of one of the judges to defendants, to show cause to the court (at its following session) why the writ should not be issued.

The constitution confers original jurisdiction upon the supreme court to issue writs of prohibition, and to hear and determine the same (Const. 1875, art. 6, sec. 3; Amendment of 1884, sec. 8); but no procedure for the exercise of such jurisdiction is prescribed by the fundamental law or by any statute whatever.

Without a general review of the history of the writ, it may be well at this point to remark that under the system of jurisprudence, from which ours is derived, a prohibition could be obtained from the superior courts of common law in term time, and from the court of chancery in vacation as well as in term. There is general unanimity among text-writers on this point. 2 Chitty's Prac., pp. 406, 388, 355 ; Lloyd on Prohibition, chap. 9, sec. 3, p. 58 ; Shortt on Mandamus and Prohibition, 427 ; 1 Wooddesson's Lectures, 85, note *e;* 1 Maddock's Chancery, 12.

This jurisdiction of chancery was expressly placed on the ground of necessity and was exercised for the avowed purpose of preventing in this regard a failure of justice during the vacation of the law courts. It was so well recognized that the adjudications refer to it rather incidentally than directly, but the remarks of the judges clearly show that the power was unquestioned. *Iveson v. Harris* ( 1802 ), 7 Vesey, 257 ; Lord ELDON in *In re Bateman* ( 1870 ), 9 Eq. Cas. L. R. 660 ; *Saunderson v. Claggett* ( 1720 ), 1 P. Wms. 663 ; *Montgomery v. Blair* ( 1804), 2 Sch. & Lefr., star p. 136, Lord REDESDALE ; *Re Foster* ( 1857 ), 24 Beavan, 428 ; *Anon.* (1718 ), 1 P. Wms. 476.

Such a writ was sometimes issued from chancery, returnable into one of the superior courts of common law when the nature of the case appeared to require it. *Blackborough v. Davis* ( 1701 ), 1 P. Wms. 43.

It was a general maxim of English law that for every wrong there should be a remedy ( Broom's Leg. Max., star p. 4191 ), and at a very early day it was expressly declared by the statute of Westminister II., that " Whensoever, from thenceforth a writ shall be found in the chancery, and in a like case, falling under the same right and requiring like remedy, no precedent of a writ can be produced, the clerks in chancery shall agree in forming a new one ; and, if they cannot agree, it shall be adjourned till the next parliament, where a writ shall be

framed by consent of the learned in the law, lest it happen for the future, that the court of our lord the king be deficient in doing justice to the suitors."

Later the same notion of the proper functions of courts, embodied in the last lines of that statute, found more positive expression in the language of Magna Charta : "To none will we sell, to none deny, to none delay, right or justice."

During the prevalence of such conceptions of law it is not wonderful that the idea, that such a necessary remedy as prohibition could lie in abeyance, at any time, never took shape. On the contrary the writ was obtainable somewhere, always, and the tendency of legislation in England has invariably been in the direction of increasing rather than impairing the facilities for its use. 1 Wm. IV. (1831), chap. 21 ; Petty, Bag. Act. 12 & 13 Vict. (1849), chap. 109 ; *Amstell v. Lesser* (1885), 16 Q. B. Div. L. R. 187.

It played a very important part in the historic struggle of the English people to maintain the supremacy of the common law against the encroachments of jurisdiction on the part of the ecclesiastical courts, and was found extremely effective in keeping the latter within their constitutional limits, In the earliest authentic records of English precedents occur repeated illustrations of its employment for that purpose.

To these facts probably may be traced the idea of its importance prevailing among English-speaking peoples which has taken shape in the western hemisphere in repeated constitutional assurances of its fixed place in jurisprudence, declarations intended to secure to the citizens of these states the protection which it gave at the common law against possible usurpations of judicial authority.

Our own constitution, besides recognizing this writ, asserts in the bill of rights, following the lead of Magna Charta, that: "The courts of justice shall be open to every person, and certain remedy afforded for

every injury to person, property or character, and that right and justice should be administered without sale, denial or delay." Const. 1875, art. 2, sec. 10.

Though we have no statute dealing directly with the remedy in question, nevertheless there are some general provisions of law which appear to cast light on the subject of this discussion and should be noted.

"Sec. 3243. All courts shall have power to issue all writs which may be necessary in the exercise of their respective jurisdictions, according to the principles and usages of law." R. S. 1889.

"Sec. 8951. All writs and process, issued by any judge or justice of the peace or other officer authorized to issue the same, shall run in the name of the state of Missouri, and be subscribed by the officer issuing the same." R. S. 1889.

From these sections it is evident that the legislative department supposed that judicial power (or at least so much thereof as might be necessary to lay a foundation for effective action later by the court in due course) might occasionally be lawfully exerted in vacation.

This idea is yet more definitely expressed in statutes which plainly declare or imply that orders of injunction (R. S. 1889, sec. 5488), writs of *mandamus* (R. S. 1889, sec. 6811), *supersedeas* (R. S. 1889, sec. 2286) and *habeas corpus* (R. S. 1889, sec. 5346) may be issued in vacation by a single judge, though there is no express authority therefor in the constitution, which vests the judicial power in the "courts" as such.

The statute relating to *mandamus* declares that: " Where any writ of *mandamus* shall be issued out of any court in this state, or by any judge thereof in vacation, directed and delivered to any person, who, by law, is required to make return of such writ, such person shall make his return to the first writ of *mandamus*." R. S. 1889, sec. 6811.

It will be noted at a glance that this language does not purport to confer authority on a single judge to

issue an alternative writ in vacation. It refers to that authority merely by way of recital, clearly implying the existence of such power already. That section simply recognizes that existing power ; and it has been expressly held, in a recent and unanimous opinion of this court, that the issuance of such a writ by a single judge · in vacation is not beyond the constitutional grant of power to this *"court"* to "issue, hear and determine" the writ of *mandamus.*   *State ex rel. Sharp v. Weeks* ( 1887 ), 93 Mo. 499.

The grant of authority to courts in this state includes "matters of both law and equity." Const. 1875, art. 6, sec. 1.   This court, therefore, in the exercise of original jurisdiction in prohibition, in the absence of any statute on the subject, may, and, we think, should, shape its proceedings in such a form as will preserve the effectiveness of the ancient remedy administered by the superior courts, either of law or chancery, in the common-law system of jurisprudence.   Compare *Wilcox v. Wilcox* ( 1856 ), 14 N. Y. 575 ; *Brown v. Snell* ( 1874 ), 57 N. Y. 299 ; *State v. Merry* ( 1833 ), 3 Mo. 278.

To do less would be to disregard the obvious purpose of the statute which declares that "the supreme court, in addition to the powers conferred by the constitution, shall have power to direct the form of writs and process, not being contrary to or inconsistent with the laws in force for the time being."   R. S. 1889, sec. 3278.

This section has been the law since a very early day in Missouri (Act of January 7, 1825, concerning "courts ;" R. S. 1825, p. 268, sec. 3 ; R. S. 1835, p. 155, sec. 7 ; 1865, p. 541, sec. 2), and it may be instructive to mention further in this connection, that during the existence of a separate chancery court ( before its jurisdiction was merged in the present courts ) it was provided that, "The said superior court of chancery and circuit courts shall be considered as always open for granting injunctions, writs of *certiorari* and *other process*

*usually granted in vacation.*" Act of December 8, 1820 ; 1 Terr. Laws Mo., p. 703, sec. 9.

The English court of chancery, as has been already shown, had the undoubted right to set on foot proceedings in prohibition, during the vacation of that court or of the other courts, by process appropriate to the emergency. In molding the procedure of to-day to meet the exigencies of justice that fact cannot be ignored.

The ancient practice in prohibition was somewhat complicated and incumbered with fictions. 3 Black. Com., star p. 112 ; *Arnold v. Shields* (1837), 5 Dana, 18. It need not be described here as it is obselete in England (1 Wm. IV. (1831), ch. 21, sec. 1 ), and the American practice has conformed to the later English.

The initial step in modern proceedings, upon a proper petition ( in the nature of a suggestion ) for such relief, is an order to the defendant to show cause why the writ should not be granted. Such order adjudicates no right. It is merely a necessary preliminary, designed to bring the matter into court for adjudication. As was said by the supreme court of Louisiana in *State ex rel. Behan v. Judges* ( 1883 ), 35 La. Ann. 1077, "it is merely an incipient step toward a judicial investigation of the matters and complaints urged in the application ; it can be modified or recalled by the authority whence it emanates." A writ of summons, in an ordinary action, serves a similar purpose. Although the court is the repository of judicial power under our constitution, it has never been supposed that its clerk might not lawfully be invested with authority to issue a writ of summons in vacation, to bring the defendant before the court in term having jurisdiction to· determine the cause.

Independently of legislation and by the sanction of long usage, the judges of the superior courts of England exercised a very extensive jurisdiction at chambers over many minor proceedings, both in vacation and in term

time.   This practice probably originated, as one learned author observes, from the overflow of business of the full court in term, "and in the vacation from the absolute necessity for some tribunal having power to interfere and relieve from the consequence of the abuse of the process of the court, or of irregularities, as by illegal arrest, or execution under irregular or insufficient proceedings, under which, otherwise, a party might continue in imprisonment, or his goods be irretrievably sold under an execution, sometimes without any redress, or at least not otherwise redeemable until the next term."

The same author continues on this subject thus: "The authority of a judge at chambers to make orders in the various cases which are brought before him is, when considered upon principle, the authority of the court itself ; his order may be considered as an *inceptive* act of the court; he ought never to make such order, unless from his experience in the practice of the courts he knows that it is most probable that the majority of the court would afterwards, if appealed to, ratify such order.   And although the order is usually obeyed from respect, or fear of its being afterwards enforced and disobedience punished, yet no order which is made can be enforced by attachment until it has been first made a rule of the court, and the party who disputes the propriety of the order has an opportunity to question its validity by application to the court.   And, although an order has been acquiesced in and acted upon, still it must be made a rule of court before an attachment can be obtained for disobeying its directions."   3 Chitty Prac., pp. 19, 20.

It is not to be inferred from the presentations of these quotations from the source indicated, that we suppose the judges of our courts, generally, possessed of such inherent powers at chambers or in vacation as were the English judges.   In the main, the powers of the former are regulated by plain laws, constitutional

or statutory; but in the present instance we are compelled to deal with a subject in which the general "principles and usages of law" ( R. S. 1889, sec. 3243 ) must guide us to some conclusion, and to reach a just one it is necessary to consider what official action the judge of a court may properly take in vacation toward making the action of the court itself effective according to the "principles and usages" referred to.

The observation of Mr. Chitty that a preliminary order of the judge in vacation is, upon principle, properly referable to the authority of the court itself, finds support in this state in a very late case wherein the act of a circuit judge in vacation, in appointing a receiver for a partnership, was considered and held a lawful and proper exercise of the jurisdiction vested in the court itself, sustainable on the ground of the inherent power of the latter, in all matters of equity, and not dependent upon any statute. *Greely v. Bank*, 103 Mo. 212.

Bearing in mind the purpose of the writ of prohibition, its history and the existing condition of the law here, should we suppose that the constitution of our state designed to limit the scope or diminish the occasions of its usefulness as recognized in the English law? It would seem not. Yet if it be held that no judge of the court during its vacation has authority, according to the "principles and usages of law," to make a rule upon a defendant to show cause in such a case, it would follow as a necessary consequence that, during the greater part of the year, no step whatever could be taken toward utilizing this useful writ, however great the urgency for its interposition.

It is an established rule of construction of fundamental, as well as of other, laws, that the effects and consequences of any proposed interpretation of it may properly be considered to ascertain what was probably the intention designed to be expressed therein. *State v. Hope* (1889), 100 Mo. 361. Applying now that rule, we note that the larger part of the business of this

court is performed by the judges while the full court stands adjourned, and "vacation," in its application to all courts, and their officers, is construed, by statute, "to include any adjournment of court for more than one day." R. S. 1889, sec. 6570. So that if no one were authorized in "vacation" to make the preliminary order to show cause essential to institute such a proceeding, it would follow, in many instances of wrongs attempted under the forms of law, that our people would be without the means of preventive relief which in similar circumstances might have been given at common law. No court surely would adopt a construction involving such a denial of justice in many cases, unless the law to that effect was too clear to permit of any other; for an intent to produce such results could not fairly be imputable by construction to intelligent lawgivers.

On the contrary, the fact that such consequences would follow is a solid premise from which to argue that no such construction was within the meaning and intent of the constitutional language giving the power to issue the writ.

Many states of fact can be readily conjectured wherein prohibition would be the only remedy that could be afforded for the relief of a party entitled thereto. When we consider the facility with which it might have been obtained at common law, and how its efficiency would be paralyzed by limiting its use merely to cases that could be instituted while the full court was in session, we think it must logically follow, from the very necessity of the case, that the original order in this cause should be sustained as the appropriate form of process to effectively begin such a proceeding. *State ex rel. v. Judge* ( 1870 ), 22 La. Ann. 581. .

It is a general rule of law which has passed into a maxim, that a grant of power or jurisdiction is supposed to tacitly imply a grant of that without which the grant itself would be ineffectual. Broom's Legal Maxims

The State ex rel. Macklin v. Rombauer.

[ 8 Am. Ed.] star pp. 479, 486. Thus, where an English statute gave a justice jurisdiction over an offense, it was held to impliedly give him power to issue process to apprehend anyone charged with such offense. *Bane v. Methuen* (1824), 2 Bing. 63.

As was said by Sir FREDERICK POLLOCK, C. B., in *Smeeton v. Collier* (1847), 1 Ex. 462: "Where the legislature simply gives a power to the court, it is to be taken that the court receives all the ordinary powers necessary for that purpose." And in *State v. Ryno* (1887), 49 N. J. L. 603, it was declared that "the right to hear and decide the cause necessarily implies authority to use the process provided by the law to bring in the parties."

The rule is especially applicable to constitutional grants of power, since such instruments are not designed ( and usually do not attempt ) to furnish details of procedure, but merely express, briefly, the general nature of the power to be exercised.

We think the jurisdiction given to this court to issue, hear and determine writs of prohibition includes as a necessary and essential incident of that jurisdiction, according to the principles and usages of law, a power in each judge thereof, during its vacation, to issue a preliminary order to show cause, returnable into court, as the necessary process to initiate the proceeding.

It follows that the motion to quash the order made herein should be overruled, and that defendants be directed to show cause to this court, as therein required, within ten days from the service of this order. SHERWOOD, C. J., concurs ; BLACK, J., dissents. BRACE, J., is of opinion that, as the decision will involve a point of general practice in the court, the cause should be certified to the court *in banc*, which latter order is accordingly made with the concurrence of all the judges of this division.