VOL. 257, OCTOBER TERM, 1913. 19

State ex rel. United Rys. Co. v. Reynolds.

## THE STATE ex rel. UNITED RAILWAYS COMPANY v. GEORGE D. REYNOLDS et al., Judges of St. Louis Court of Appeals.

### In Banc, April 2, 1914.

1. **CERTIORARI: Issued by Judge in Vacation of Court.** A preliminary writ of *certiorari* will not be quashed simply because it was issued by a judge of the Supreme Court in vacation, and not by the court in term time.

2. ——————: **To Compel Court of Appeals to Obey Supreme Court Decisions: Jurisdiction.** It is just as much the duty of the courts of appeals to follow the last previous ruling of the Supreme Court on questions of law and equity arising in cases pending before them, as it is their duty to conform their proceedings to their jurisdictional limitations. No part of the Constitution can be ignored or disregarded, and it says that "the last previous rulings of the Supreme Court on any question of law and equity shall, in all cases, be controlling authority in said courts of appeals;" and it further says that the Supreme Court shall have a superintending control over the courts of appeals by mandamus, prohibition and *certiorari*, and it fixes no limit on the right of the Supreme Court to superintend, and none should be written into it by the courts; and under that superintending power the Supreme Court has jurisdiction, by its writ of *certiorari*, to compel a court of appeals to transfer a case to it in which such court has rendered an opinion in which it refused to follow a previous decision of the Supreme Court. [Following State ex rel. Curtis v. Broaddus, 238 Mo. 189; State ex rel. Evans v. Broaddus, 245 Mo. 123; and State ex rel. Iba v. Ellison, 256 Mo. 644; and overruling State ex rel. v. Smith, 101 Mo. 174; State ex rel. v. Bland, 168 Mo. 1; State ex rel. v. Smith, 173 Mo. 398; State ex rel. v. Broaddus, 216 Mo. 336; Railroad v. Smith, 154 Mo. 300.]

3. ——————: ——————: **Harmony in Opinions.** The provision in the constitutional amendment of 1884 declaring that "the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said courts of appeals," was established to bring about uniformity in the rules of law and equity in all the appellate courts of the State. But that provision does not mean that the decisions of the courts of appeals shall conform to the rules of the Supreme Court to the point of absolute harmony, in the very language used and the expressions employed, but it does mean that harmony should exist in matters of real substance.

20        SUPREME COURT OF MISSOURI,

State ex rel. United Rys. Co. v. Reynolds.

4. ——————: ——————: Ascertainment of Evidence in Case Decided. Where the decision of a court of appeals is brought in review by a writ of *certiorari*, on the ground that said court has refused to follow the last previous ruling of the Supreme Court, what the evidence was in the case decided by the court of appeals will be ascertained from what the judges thereof say in their written opinion it was, and not from an examination of the record and abstract in that case.

5. ——————: ——————: No Substantial Departure: Loss of Time: No Evidence of Value. Nelson prosecuted a suit against a railway company for damages for personal injuries. There was evidence that he was a common laborer, that he was in bed three weeks, that he was unable to get out of the house for six weeks and that when he later secured employment he had to surrender it because of his inability, because of said injuries, to render the service, and relator made no objection to the testimony establishing those facts; but there was no testimony as to what wages, if any, he had been receiving prior to his injuries, or what his earning capacity had been. The court instructed the jury that, in estimating his damages, they should consider, among other things, "his loss of time." *Held*, that he was entitled at least to nominal damages for loss of time, and as defendant neglected to ask the trial court to confine his recovery for loss of time to nominal damages it could not complain of the instruction, and a decision of the Court of Appeals holding there was no reversible error in the instruction under the circumstances, was not so out of harmony with the last previous ruling of the Supreme Court (or its later rulings) as to authorize the Supreme Court to interfere with said decision by its writ of *certiorari*.

*Held*, by GRAVES, J., dissenting, with whom FARIS, J., concurs, that the ruling of the Court of Appeals is in conflict with decisions suggested by relator and other decisions. and its record therefore should be quashed.

## Certiorari.

WRIT QUASHED.

*Boyle & Priest, R. E. Blodgett* and *T. E. Francis* for relator.

(1) A judge of this court has power to issue a writ of *certiorari* in vacation. State ex rel. v. Dearing, 184 Mo. 647; State ex rel. v. Rombauer, 105 Mo. 103;

State ex rel. v. Rombauer, 104 Mo. 619.   (2)   Even though the judge issuing the writ of *certiorari* had no power to issue it, nevertheless the record having been filed in this court, pursuant to the writ, this court may ratify and adopt the writ and take such action with respect to the record filed as the rules of law and the demands of justice require.   In re Thirty-fourth St., 81 Pa. St. 27.   (3)   *Certiorari* lies where the lower court has jurisdiction but exercises it in an unwarranted manner.   State ex rel. v. Broaddus, 245 Mo. 123; State ex rel. v. Smith, 176 Mo. 90.   It also lies to correct an error appearing on the face of the record that cannot be reached by appeal or writ of error, although the lower court had jurisdiction to decide the matter complained of.   State ex rel. v. Mosman, 231 Mo. 482. (4)   The Constitution enjoins upon the Courts of Appeals the duty of following the ''last previous ruling of the Supreme Court.''   Section 6 of Amendment of 1884 to Article 6 of Constitution.   (a)   This constitutional mandate is a limitation upon the power of the Courts of Appeals, and hence when one of these courts refuses to follow the ''last previous ruling of the Supreme Court,'' it is acting beyond its jurisdiction, or, to express it in another way, is exercising in an unwarranted manner the general jurisdiction it possesses to decide the case.   State ex rel. v. Broaddus, 238 Mo. 189.   (b)   But even though the failure of a Court of Appeals to observe this Constitutional mandate would not, technically speaking, constitute action beyond or outside of its jurisdiction, still the Supreme Court would have power, by means of *certiorari,* to compel such observance, since the Constitution makes it the duty of the Supreme Court to exercise ''superintending control'' over the Courts of Appeals, by *certiorari* and other remedies.   Sec. 3, Art. 6, Constitution; Sec. 8, Amendment of 1884 to Art. 6 of Constitution.   These writs thus authorized are *sui generis* and are not to be

measured or circumscribed by the practice that obtained at common law with respect to such writs, but, in the nature of the thing, should be sufficiently elastic and comprehensive to enable the Supreme Court to efficaciously discharge the ''superintending'' function enjoined upon it. (5) The Constitution enjoins upon the Supreme Court the duty of exercising a superintending control over the Courts of Appeals by means of *certiorari* and other extraordinary remedies. Sec. 3, Art. 6, Constitution; Sec. 8, Amendment of 1884. This constitutional mandate requires the Supreme Court to keep the courts of appeals within the limitations and restrictions imposed upon them by the Constitution, and, so far as this duty is concerned, all such limitations and restrictions—whether with respect to territory, or to amount, subject-matter or parties involved, or to the requirement of following the ''last previous ruling' of the Supreme Court''—are of equal dignity. State ex rel. v. Broaddus, 238 Mo. 189; State ex rel. v. Broaddus, 245 Mo. 123. (6) The Court of Appeals, in the decision appearing in the record filed in this court, failed to follow the ''last previous ruling of the Supreme Court,'' in that—(a) The Court of Appeals decided that the instruction on the measure of damages in this action for personal injuries, permitting an award for loss of earnings, was not erroneous, notwithstanding there was no proof that plaintiff had lost any earnings and no proof as to what wages he had received or that he had ever received any wages, prior to his injury; whereas, (b) the ''last previous ruling of the Supreme Court'' was, that an instruction, in such a case, permitting an award for loss of earnings, was erroneous, unless the evidence definitely showed what plaintiff's earnings had been, prior to his injury. Davidson v. Transit Co., 211 Mo. 344; Slaughter v. Railroad, 116 Mo. 275; Duke v. Railroad, 99 Mo. 347.

*Glendy B. Arnold* for respondents; *Johnson, Rutledge & Lashly* of counsel.

(1) The jurisdiction to issue writs of *certiorari* is vested in the Supreme Court and not the judges of that court. Missouri Constitution, art. 6, sec. 3; Amend. 1884, sec. 8. Where the law authorizes or contemplates the doing of a judicial act, it is understood to mean that the court in term time may do it and the judges in vacation may not, without express authority, act therein. State ex rel. v. Woodson, 161 Mo. 444; Newman v. Hammond, 46 Ind. 119; Reyburn v. Bassett, McCahon (Kan.) 86; Fisk v. Thorp, 51 Neb. 1; State v. Atherton, 19 Nev. 332. (2) The courts of appeals are courts of last resort, and their judgments, in causes within their jurisdiction, and which are not in excess of that jurisdiction, are final and cannot be reviewed nor controlled by the Supreme Court by any legal process. Constitution, art. 6, secs. 12, 19, 27; Amendment 1884, secs. 3, 5 and 6. (3) The Supreme Court is given exclusive jurisdiction of all cases which may be brought to that court by writs of error and appeals; and the courts of appeals are likewise given exclusive jurisdiction of all cases which may be brought to those courts by writs of error and appeals. Constitution, art. 6, secs. 12 and 27; Amendment 1884, sec. 5. (4) Section 6 of the Amendment of 1884, which provides that "the last previous rulings of the Supreme Court on any question of law or equity, shall in all cases, be controlling authority in said Courts of Appeals" does not purport to define the jurisdiction of said courts of appeals. That jurisdiction is expressly defined by other sections of the Constitution. (5) The Supreme Court has plenary power, by prohibition, mandamus and *certiorari*, to keep the courts of appeals within the prescribed limits of their jurisdiction. Constitution, art. 6, sec. 3; Amendment 1884, sec. 8; State ex rel. v. Broaddus, 245 Mo. 123; State ex rel. v. Smith, 172 Mo.

446; State ex rel, v. Rombauer, 105 Mo. 103. (6) The courts of appeals are bound to decide every question affecting or involving their jurisdiction in accord with the ruling of the Supreme Court, whether those rulings are expressed or unexpressed, and if those courts fail in that duty the error may be corrected, in the Supreme Court, by an appropriate remedy. See authorities under point 5. (7) *Certiorari* from the Supreme Court does not lie to review the rulings of the courts of appeals in causes within their jurisdiction, which do not affect or involve that jurisdiction on the ground that said courts refuse to follow "the last previous rulings of the Supreme Court" in other cases. State ex rel. v. Smith, 173 Mo. 398; State ex rel. v. Smith, 101 Mo. 174; Railroad v. Smith, 154 Mo. 300; State ex rel. v. Broaddus, 216 Mo. 336; State ex rel. v. Broaddus, 245 Mo. 136; State ex rel. v. Broaddus, 238 Mo. 232; State ex rel. v. Broaddus, 207 Mo. 107; Curtis v. Sexton, 252 Mo. 221; State ex rel. v. Rombauer, 125 Mo. 632. (8) The Supreme Court has no jurisdiction, by appeal or error, to review the decisions of the courts of appeals on any question of law or equity. Constitution, art. 6, Amend. 1884. (9) The sole office of *certiorari* from the Supreme Court to the courts of appeals is to control the exercise of jurisdiction by the courts of appeals. Railroad v. State B. of E., 64 Mo. 308; State ex rel. v. Smith, 101 Mo. 174; State ex rel. v. Bland, 168 Mo. 1; State ex rel. v. Smith, 173 Mo. 398; State ex rel. v. Broaddus, 245 Mo. 123; Ward v. B. of E. of Gentry Co., 135 Mo. 319; State ex rel. v. Smith, 176 Mo. 99; State ex rel. v. Reynolds, 190 Mo. 588; State ex rel. v. Broaddus, 216 Mo. 344; State ex rel. v. Wooten, 139 Mo. App. 231; State ex rel. v. Baker, 170 Mo. 390; State ex rel. v. Smith, 173 Mo. 414; State ex rel. v. Broaddus, 238 Mo. 204. (10) *Certiorari* cannot be used as a substitute for an appeal or writ of error. State ex rel. v. Reynolds, 190 Mo. 589; State ex rel. v. Kansas City, 89 Mo. 34; State ex rel. v. Springer, 134 Mo. 212; State

ex rel. v. Shelton, 154 Mo. 670; State ex rel. v. Woodson, 161 Mo. 444; State ex rel. v. Bland, 168 Mo. 1. (11) Not one of the decisions of the Supreme Court which the relator charges that the court of appeals de--clined to follow contains a single word or line which, in the slightest degree, touched upon or affects the jurisdiction of the courts of appeals. Neither the jurisdiction of the Supreme Court, nor of the courts of appeals is either directly or indirectly presented, involved, discussed or decided in those cases. (12) A Court of Appeals which does not follow the last previous rulings of the Supreme Court on some non-jurisdictional point of law does not exceed its jurisdiction. Lampson v. Platt, 1 Iowa, 558; Monreal v. Bush, 46 Cal. 79; State ex rel. v. Broaddus, 216 Mo. 344. (13) "In any case where the court has jurisdiction of the subject-matter of the action and the parties are before it by the due service of proper process, the jurisdiction is never ousted by the erroneous exercise of the power which it confers, and the judgment in the case, though it may be marked by error which will cause its reversal by a higher court, is not for that reason void." Fiene v. Kirchoff, 176 Mo. 516; Ex parte Bigelow, 113 U. S. 328. (14) Jurisdiction is the power to hear and to decide. A judgment of the court is the result of the exercise of jurisdiction. Where the court is given power to decide, and its decision is responsive to the issues presented, it ought never to be adjudged to have exceeded its jurisdiction in the erroneous decision of questions which do not affect its jurisdiction. Monreal v. Bush, 46 Cal. 79; Karby v. Superior Court, 162 Cal. 285. (15) If the failure of the courts of appeals to follow the last previous rulings of the Supreme Court on some non-jurisdictional point of law constitutes a ruling in excess of the jurisdiction of that court, then every decision of every point of law in every cause now or hereafter before those courts may be reviewed by this court on writ of *certiorari.* (16) If the issuance of the

26    SUPREME COURT OF MISSOURI,

State ex rel. United Rys. Co. v. Reynolds.

writ of _certiorari_ is sustained, in this proceeding, then a long line of well-considered decisions of this court will be overruled, some of which are: State ex rel. v. Smith, 101 Mo. 174; State ex rel. v. Bland, 168 Mo. 1; State ex rel. v. Smith, 173 Mo. 398; State ex rel. v. Broaddus, 238 Mo. 189; State ex rel. v. Broaddus, 216 Mo. 336; Railroad v. Smith, 154 Mo. 300. (17) The relator contends that a certain ruling of the Court of Appeals in the Nelson case, hereafter to be pointed out, is in conflict with Davidson v. United Railways, 211 Mo. 320; Slaughter v. Railroad, 116 Mo. 269; and Duke v. Railroad, 99 Mo. 347, prior decisions of this court. No other Supreme Court decisions were cited or relied upon by the relator in the Court of Appeals as being in conflict with the ruling of that court in the Nelson case. There is really no conflict between the challenged ruling of the Court of Appeals and the rulings of this court in the cases relied upon by relator.

BROWN, J.—_Certiorari_ to quash judgment of the St. Louis Court of Appeals.

This is an original action in this court to quash a judgment entered by the St. Louis Court of Appeals affirming a judgment of the circuit court of St. Louis city, in a case in which one Edward W. Nelson was respondent, and the United Railways Company (the relator herein) was appellant, for the alleged reason that said Court of Appeals failed to follow the last previous ruling of this court, as required by section 6, article 6, Constitution of Missouri, as amended in the year 1884.

The particular issue upon which it is alleged that respondents, as such Court of Appeals, failed and refused to follow the last previous ruling of this court arose in this wise: The said Edward W. Nelson prosecuted an action in the circuit court of St. Louis City against the relator for personal injuries alleged to have been inflicted by or through the negligence of relator, in which action a judgment was entered in favor of

## VOL. 257, OCTOBER TERM, 1913.    27

State ex rel. United Rys. Co. v. Reynolds.

said Edward W. Nelson for $4200. In the suit so prosecuted by said Nelson there was evidence tending to prove that he was confined to his bed three weeks, and that he lost time from his work as a common laborer on account of his injuries, but there was no evidence as to what wages, if any, he had been receiving before his injuries, nor what his work was reasonably worth. The circuit court gave an instruction to the jury authorizing it to find for said Nelson for the time he had lost by reason of his alleged injuries. On appeal, error was assigned by relator on account of the aforesaid instructions. In refusing to reverse the judgment so rendered in favor of said Nelson, the relator asserts that said Court of Appeals failed to follow the ruling of this court in the cases of Slaughter v. Railroad, 116 Mo. 269, 274; Davidson v. Transit Co., 211 Mo. 320, 344, and Duke v. Railroad, 99 Mo. 347.

The instruction given by the circuit court, and which relator contends should have worked a reversal of the judgment obtained by said Nelson, reads as follows:

"The court instructs you that, if you find for the plaintiff, you should, in estimating his damages, consider his physical condition before and since receiving the injuries for which he sues (as shown by the evidence) *his loss of time* if any, and his physicial and mental anguish, if any suffered by him on account of his injuries at the time of and since such injuries (as shown by the evidence) and such damages, if any, as you may, from the evidence, find reasonably certain he will suffer in the future by reason of his injuries, and you will assess his damages at such sum as will, in your judgment, under the evidence, reasonably compensate him for such injuries, not exceeding the sum of $10,000."

(The italics are our own and are employed to the end of inviting attention to those words later in the opinion.)

The facts in said case of Nelson v. United Railways Co., and the reasons assigned by respondents for affirming the judgment of the circuit court in said cause, are set out in that part of their opinion which reads as follows:

"Plaintiff testified that he was in bed three weeks and four days and was unable to get out of the house until six weeks elapsed after his hurt. It appears, too, that he was unable to perform any kind of manual labor for a week thereafter. As above said, all of this evidence was received without objection on the part of defendant and, this being true, it was entirely proper for the court to submit the question arising thereon to the jury, though no claim was made in the petition on that account. [See Mellor v. Mo. Pac. Ry. Co., 105 Mo. 455; Loe v. Railroad Co., 57 Mo. App. 350.] The judgment is then not to be reversed for the reason a recovery was allowed as for loss of time in the past because not claimed in the petition, for it is clear that matter was waived by permitting the proof to be received without objection and is to be regarded as a mere immaterial variance under the statute. [Litton v. Railroad Co., 111 Mo. App. 140, 146.]

"In so far as the right to recover as for loss of earnings in the future is concerned, the petition expressly lays a claim for that and, of course, the evidence tends to prove it was properly received. By reference to the language of the instruction above set out, it will appear that it does not expressly direct the jury to consider plaintiff's loss of time in the past but on the contrary authorizes a recovery alone for 'his loss of time.' See the words italicized in the instruction. But, of course, this authority to consider plaintiff's loss of time as an element of damages is to be viewed as though the jury understood it to authorize a recovery for the time lost in the past as well as diminished earning power in the future. However this may be, the evidence of time lost as well as that

tending to prove a diminished earning capacity was properly in, and the giving of the instruction as worded is not to be condemned for the mere failure to lay a claim in the petition for past loss of time.

"But it is argued though evidence was received as to the loss of time in the past and diminished earning power for the future, the court should not have submitted these elements of recovery to the jury for the reason no evidence was introduced tending to prove the value of plaintiff's time. It is true nothing appears as to the amount plaintiff earned when employed and if the case presented the feature of one following some particular calling touching the nature, character and compensation of which the jury were wholly unadvised, the argument would inhere with much force. It is not so, however, when it appears, as here, that the plaintiff's calling is one of a character and kind which together with the usual compensation therefor is well known and understood by all fairly intelligent men in the community. In such cases, it is said the jurors in the box know something of the value of the time lost and the earning power diminished as well as the witnesses called to give testimony thereon. That plaintiff was employed at the time of his injury, the record reveals beyond question. Therefore, that his past loss of time was of value to him sufficiently appears. That his earning power was diminished for the future is not questioned, for the evidence amply reveals it, and then, too, it is said his injuries to the shoulder are permanent. While the amount of wages he received is not shown in the evidence, it appears that he was engaged in the capacity of a common laborer for a manufacturing company and had charge of hauling from the factory and loading on the cars ice cream cabinets for shipment. After his injury he engaged to work for a contractor in laying concrete, but was unable, because of his hurt, to perform the task assigned him and lost the place. It

thus appearing that his occupation was that of common labor, almost any intelligent citizen, who employs common labor, is sufficiently familiar with the value of the time of one so engaged to testify concerning it in court. This court has several times heretofore declared such to be true with respect to the competency of witnesses to speak on the question. [See Bogue v. Corwine, 80 Mo. App. 616, 620; Kelly v. Rowane, 33 Mo. App. 440.] The jurors as well as others possess information touching this question and they know that the loss of time by and the diminished earning capacity of one engaged in common labor possesses some value for which a recovery should be allowed. Though it be that they are not informed as to the precise amount of the loss to be compensated and that a verdict therefor is not authorized without evidence tending to prove the value of the loss, it is certain that enough appears from the facts of employment, the injury and the loss of time as a consequence thereof to authorize a nominal recovery on that account. [See Mabrey v. Gravel Road Co., 92 Mo. App. 596; Jennings v. Appleman, 159 Mo. App. 12; Loe v. Railroad Co., 57 Mo. App. 350.] Therefore, the plaintiff's instruction authorizing a recovery for 'his loss of time' is not to be condemned as without any warrant whatever in the evidence. It appears to be well enough in its general scope, but, it may be defendant was entitled to have the recovery on the score of loss of time and diminished earning capacity limited to that of nominal damages only. Though such be true, the judgment should not be reversed on account of plaintiff's instruction, for it does not appear that defendant made any request whatever toward limiting the recovery on this account to nominal damages. [See Browning v. Ry. Co., 124 Mo. 55; Mabrey v. Gravel Road Co., 92 Mo. App. 596.]''

Respondents have filed herein their motion to quash the preliminary writ issued in this cause on the

VOL. 257, OCTOBER TERM, 1913.            31

State ex rel. United Rys. Co. v. Reynolds.

following grounds: (1) That such writ was issued by a judge of this court in vacation, and not by the court in term time; and (2) that under the Constitution of this State this court is without power to review by *certiorari* and quash the judgment entered by respondents. Said motion was taken with the case.

## OPINION.

I. On the first point presented in this motion respondents cite State ex rel. v. Woodson,
**Writ Issued in Vacation.** 161 Mo. 444; Newman v. Hammond, 46 Ind. 119; Reyburn v. Bassett, McCahon (Kan.), 86; Fisk v. Thorp, 51 Neb. 1; State v. Atherton, 19 Nev. 332; Constitution of Missouri, article 6, section 3.

The general purport of the cases above cited is that when power is conferred by the Constitution or statutes upon a court to perform specific acts, such acts cannot be performed by the person, or persons, constituting the court at a time when such court is not in session.

On this point the relator cites the case of State ex rel. Macklin v. Rombauer, 104 Mo. 619, in which the rule is announced that under his combined powers as a chancellor and at common law, a judge of this court in vacation may issue a temporary rule in prohibition returnable to and triable by the court when the same shall have been lawfully convened.

The power to exercise our superintending control over the courts of appeals by writs of *certiorari* is given to us by the same section of the Constitution (Art. 6, sec. 8, Amendment of 1884) which authorizes us to superintend such courts by prohibition. By analogy it seems that, if a judge of this court may lawfully issue a temporary rule in prohibition while the court is not in session, by the same token he may law-

fully issue the writ of *certiorari* during vacation. Our
Rule No. 25 seems to imply that such power exists.
Therefore, the first insistence of respondents will be
overruled.

II.  On the second point in respondents' motion
to quash our preliminary writ is presented an argu-
ment far more ingenious and fervid than logical, in
which we are invited to overturn the rules of law an-
nounced in our majority opinions in the
Power to Review cases of State ex rel. Curtis v. Broad-
by Certiorari. dus et al., 238 Mo. 189; State ex rel.
Evans v. Broaddus et al., 245 Mo. 123;
and State ex rel. Iba v. Ellison et al., 256 Mo. 644. These
cases will hereafter be referred to in this opinion as
the Curtis, Evans and Iba cases.

In those cases we held, in effect at least, that it
is just as much the duty of the courts of appeals to
follow the last previous ruling of this court on ques-
tions of law and equity arising in cases pending be-
fore them, as it is to conform their proceedings to their
jurisdictional limitations.  In the last named cases we
also announced our power to quash judgments of
courts of appeals where they refuse to follow the last
previous rulings of this court.

Section 6, article 6, of the Amendment to our Con-
stitution adopted in 1884 reads as follows:

"When any one of said courts of appeals shall
in any cause or proceeding render a decision which
any one of the the judges therein sitting shall deem
contrary to any previous decision of any one of said
courts of appeals, or of the Supreme Court, the said
Court of Appeals must, of its own motion, pending
the same term and not afterward, certify and transfer
said cause or proceeding and the original transcript
therein to the Supreme Court, and thereupon the Su-
preme Court must rehear and determine said cause
or proceeding, as in case of jurisdiction obtained by

ordinary appellate process; and the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said courts of appeals.''

The above quoted section of our organic law was enacted to bring about uniformity in the rules of law and equity in all the appellate courts of this State. As no uniformity could be expected if each appellate court should be permitted to adopt its own construction of the law, it was ordained by a succeeding clause of the same amendment (Sec. 8, art. 6, Amendment 1884) that this court should have a superintending control over the courts of appeals by mandamus, prohibition and *certiorari.* No limits were fixed on such right to superintend, and we should not write a limitation into the Constitution which its framers have not seen fit to place there.

The argument of respondents' learned counsel to the effect that the courts of appeals may be supervised or superintended by this court when they exceed their jurisdiction, but cannot be supervised when they refuse to follow the last previous ruling of this court, is equivalent to saying that some of the provisions of our Constitution were intended to be obeyed, while the last provision of section 6, article 6, Amendment of 1884, was intended only as a joke, and may be disobeyed at any time the courts of appeals see fit to disregard it. This insistence of respondents is unsound. The citizens of Missouri are one people, and in furtherance of the spirit of another provision of the Constitution inhibiting local laws, it is their desire that the same rules of law shall prevail in all parts of the State and in each court thereof.

But, say respondents, unless we overrule the Curtis, Evans and Iba cases we must overrule the following decisions of this court: State ex rel. v. Smith, 101 Mo. 174; State ex rel. v. Bland, 168 Mo. 1; State

ex rel. v. Smith, 173 Mo. 398; State ex rel. v. Broaddus, 216 Mo. 336; and Missouri, Kansas & Texas Ry. Co. v. Smith, 154 Mo. 300.

We fully understand that situation, and, notwithstanding our high regard for the eminent jurists who fathered the decisions last cited, and our respect for their learning and judicial acumen, we are forced to take the Constitution as we find it—not necessarily as others have construed it. The Constitution is an instrument of such force that it perpetuates its own vitality, regardless of the number of times it be disobeyed. Past constructions of it, if correct, aid us in understanding its meaning, but erroneous interpretations of that instrument, however frequent and numerous, do not repeal its provisions or impair its virility.

Being fully convinced that the several cases last cited were incorrectly ruled, they are expressly overruled in so far as they conflict with the views expressed in the Curtis, Evans and Iba cases.

But, say respondents, the rule we have announced in the Curtis, Evans and Iba cases will force us to review by *certiorari* every case that may hereafter be adjudicated by our courts of appeals. This argument means that when a duty involves much labor it should be disregarded. We do not so understand the law, nor is that view in harmony with our official oaths. A few of the applications for *certiorari* filed in this court would seem to support the pessimistic views of respondents' learned attorneys, but the number of writs issued does not sustain such theory.

In speaking of our power to supervise the courts of appeals by *certiorari*, LAMM, C. J., in the Evans case (245 Mo. l. c. 135), said: "That the power should be guardedly used with modest gentleness and always with circumspection argues nothing against its proper use. That its use is delicate and liable to abuse ar-

## VOL. 257, OCTOBER TERM, 1913.   35

State ex rel. United Rys. Co. v. Reynolds.

gues nothing against its use when its use is called for.''

By undertaking to make the rules of law and equity as announced by the courts of appeals conform to our own opinions it was never intended that the very language of the opinions of such courts of appeals should be made to harmonize with the decisions of this court as completely as the strings on a violin or the keys of instruments designed to transmit wireless messages. No such Utopian idea of judicial harmony can ever be hoped for. Before this court should quash by *certiorari* the judgment of one of the courts of appeals, the failure of such court of appeals to follow our last previous ruling should exist as a matter of real substance, and be so plain that no intelligent man with fair powers of discrimination would have difficulty in locating the conflict.

We may need rules which will require notice and an opportunity to be heard by written suggestions before writs of *certiorari* shall issue to quash judgments of our courts of appeals. If so, that is a mere matter of detail which does not detract from our jurisdiction to issue such writs.

III. Relator contends that as there is no evidence of the value of the time lost by Nelson, is was reversible error to give to the jury the instruction hereinbefore quoted. Respondents assert that the giving of said instruction was not error, and that the affirmance of the Nelson judgment was not such a failure to follow the previous rulings of this court as to warrant us in quashing their judgment.

*Instruction: Nondirection.*

This raises a question preliminary to the main issue in the case, to-wit: Shall we ascertain what the evidence was in the Nelson case by the statement thereof as prepared by the respondents and recited in their written opinion, or shall we read and review the evi-

36 SUPREME COURT OF MISSOURI,

State ex rel. United Rys. Co. v. Reynolds.

dence in said Nelson case and ascertain if it has been correctly digested by respondents? We are of opinion that we should not examine the evidence, but rely upon the facts as found and recited by respondents. We are aware that a somewhat different rule was adopted in the Curtis case (238 Mo. 189), where the evidence was re-examined, but that case was in a different class to this one, having once been before us on the sufficiency of the evidence and a ruling made that such evidence for plaintiff made out a prima-facie case for the jury. We accordingly held in the Curtis case that our ruling on the evidence became the law of that case and should not have been disturbed by the court of appeals without a review of the evidence upon which our opinion was predicated.

The facts in the Nelson case (now in judgment) have not heretofore been presented to us, and where that class of cases is brought before us by *certiorari* we will consider only the pleadings, evidence and facts as recited by the court of appeals whose judgment is sought to be quashed.

It may be argued that should the judges of the courts of appeals fail to state the pleadings and facts correctly (a point upon which I personally have no fears) it might result in some individual case being decided incorrectly and not in harmony with our previous rulings; but that would not militate against the primary object sought by section 6, article 6, supra, i. e., the uniformity of judicial construction on issues of law and equity in this State.

The substance of the decisions of this court which relator claims the respondents have failed to follow in affirming the Nelson judgment are as follows: In Slaughter v. Railroad, 116 Mo. 269, 275, it was not charged in the petition that the plaintiff lost time by reason of his alleged injuries, and the trial court upon objection excluded evidence upon that point, but gave

an instruction authorizing a recovery for loss of time. *Held* to constitute reversible error.

In the case of Davidson v. Transit Co., 211 Mo. 320, 344, there was an "entire absence of plaintiff's probable impairment of earning capacity in the future," but the trial court, by its instructions, authorized a recovery for such impairment of earning capacity, and the judgment being for $12,000, the instructions were held to be erroneous and the judgment was reversed.

In the case of Duke v. Railroad, 99 Mo. 347, it was held that an instruction authorizing a recovery for "large sums incurred for medical services and nursing," where there was no evidence as to the cost of such medical services and nursing, was reversible error.

Whether instructions were requested by defendants in the cases last cited limiting the recovery for loss of time to nominal damages does not appear.

Respondents contend that, under the facts disclosed in the Nelson case, there was enough evidence as to loss of time admitted without objection to raise a presumption that Nelson did lose some time and was entitled to at least nominal damages on that score; and that the relator has no just right to complain of said instruction. That if it was defective at all, such defect arose because it was too general, and that if relator was not satisfied therewith it should have requested an instruction on its own behalf limiting defendant's recovery for loss of time to nominal damages. In this contention we think respondents are correct.

The opinion of respondents recites that Nelson was a common laborer and was confined to his bed more than three weeks. It is a matter of common knowledge that a man whose health and strength will enable him to perform common labor is able to earn some wages; but whether a jury will be presumed to

know what the services of such common laborer are worth at a given time and place is a matter not necessary to a decision of this case, and upon which we express no opinion.

In the recent case of King v. St. Louis, 250 Mo. 501, the evidence showed that the plaintiff was the keeper of a rooming house and before her injury was able to personally care for her rooms, but could not perform such work after she was injured. There was, however, no evidence introduced as to the value of her services, and it was held that an instruction authorizing a recovery for losses "directly caused" by her injuries did not constitute reversible error; the defendant in that case, as here, having failed to request an instruction limiting the plaintiff's recovery to nominal damages for her alleged loss of earnings.

When the pleadings and evidence are sufficient to support an instruction on an issue, and the instruction submitting said issue is only objectionable on the ground that it is too general in form, it becomes the duty of the party who may wish to complain of said general instruction to request an instruction limiting the effect thereof so that it may not be misunderstood by the triers of the fact.

In Norris v. Railroad, 239 Mo. 695, l. c. 717 (a case more recent than any of those relied upon by relator), in discussing an instruction, it was said:

"In the trial of civil cases, many important duties rest upon the attorneys for both plaintiff and defendant, among which is to aid the court in giving to the jury all the instructions which they need to enable them to arrive at a correct verdict; and the unsuccessful litigant is not entitled to a reversal because the instructions given at the request of his adversary do not cover all the points upon which instructions should have been given, unless such unsuccessful litigant has prepared and requested proper instructions on the points about which he complains. [Kerr v. Railroad,

VOL. 257, OCTOBER TERM, 1913.      39

State ex rel. United Rys. Co. v. Reynolds.

113 Mo. App. 5; Harmon v. Donohoe, 153 Mo. 274; Matthews v. Railroad, 142 Mo. 666; Browning v. Railroad, 124 Mo. 55.]''

We think the alleged error in the Nelson case is without merit. If relator had requested an instruction directing the jury that Nelson could in no event recover more than nominal damages for any loss of time he may have sustained by reason of his alleged injuries, there being no evidence of what his time was worth, and such instruction had been given, then the defendant would have no cause of complaint—that it failed to request such an instruction it has no one to blame but itself. It is the policy of the law to give every litigant one fair trial, and if he fail to get a fair trial by reason of his own neglect, the appellate courts should turn a deaf ear to his complaint.

Entertaining the views herein expressed, our preliminary writ of *certiorari* in this cause will be quashed. It is so ordered.

*Lamm, C. J.,* concurs; *Walker* and *Bond, JJ.,* concur in all except the paragraph holding that we have jurisdiction; *Woodson, Graves* and *Faris, JJ.,* concur as to our jurisdiction in opinions filed by *Graves* and *Woodson, JJ.,* and dissent from the result reached.

## DISSENTING OPINION.

GRAVES, J.—I concur fully as to what is said in sub-divisions one and two of this opinion. I have no doubt that a judge of this court in vacation can issue or direct the issuance of a writ of *certiorari.* Nor have I any doubt that it is the constitutional duty of this court to issue such writ, when it is called to the attention of this court, that one of the courts of appeals has neglected its constitutional duty to follow the latest ruling of this court upon the questions involved in the case such court is deciding.

I do not agree to the last sub-division of my brother's opinion, nor to the result reached. In my judgment the ruling of the Court of Appeals is not only in conflict with the cases suggested by the relator in this cause, but with several others which might have been mentioned. I therefore think the record of the Court of Appeals should be quashed. *Faris, J.,* concurs in these views.

## DISSENTING OPINION.

WOODSON, J.—I dissent from the majority opinion in this case for the reason stated by Judge GRAVES, in his dissenting opinion filed herein; and concur in the second paragraph thereof for the simple reason that the majority of the members of the court have deemed it wise to follow the ruling in the case of State ex rel. v. Broaddus, 238 Mo. 189.

While I do not deem that ruling to be sound, yet no good can come of continual dissents.